**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSHUA ROBERTS and
DEBORAH CHONG,
Individually and as Next Friend N.R.,                    Case No. 3:19-cv-202
their Minor Child,

                                                         Judge Rose
                    Plaintiffs,

                                                         Magistrate Judge Ovington
               v.

UNITED STATES OF AMERICA,

                    Defendant.

_____

### STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677

It is hereby stipulated by and between the undersigned Plaintiffs (meaning any person, other than the defendant, the parties' attorneys, the settlement broker, and the brokerage company, signing this agreement waiving and releasing claims, whether or not a party to this civil action), and the Defendant, United States of America, including its agents, servants, and employees (hereinafter "United States"), collectively, "the parties," by and through their respective attorneys, as follows:

1.  The parties to this Stipulation For Compromise Settlement And Release (hereinafter "Stipulation") do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, including present or future claims for wrongful death, arising

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Stipulation.

2. This Stipulation is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to the Plaintiffs. This settlement is entered into by all parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

3. In consideration for the Plaintiffs' agreement to accept the terms and conditions of this settlement, the United States agrees to pay the cash sums set forth below in Paragraph 3.a, to purchase the annuity contract described below in Paragraph 3.b., and to establish the Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust for the Benefit of                     , (hereinafter "Reversionary Trust") described below in Paragraph 3.c.

    a. Within five business days after counsel for the United States receives (1) this Stipulation signed by all parties to said document; (2) the Reversionary Trust signed by all parties to said document; (3) the Social Security numbers or tax identification numbers of Plaintiffs' and Plaintiffs' attorneys; (4) a copy of the birth certificate and social security card or alternative form of identification acceptable to the United States of                ; (5) Order(s) approving the settlement, and authorizing an individual or entity to sign, on behalf of                 ; and (6) an authorization by the Attorney General or his designee to conclude negotiations and to consummate the settlement, counsel for the United States will submit the following requests to the United States

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

Page 2 of 21

Treasury for the sum of Seven Million Eight Hundred and Sixty Thousand Dollars ($7,860,000) (hereinafter "Settlement Amount") to be paid as follows:

(1) An -electronic funds transfer (EFT) in the amount of Three Million Nine Hundred and Thirty Thousand Dollars ($3,930,000) (hereinafter "Upfront Cash") made payable to "Whitehurst Harkness Brees Cheng Alsaffar Higginbotham & Jacob, PLLC Trust Account" on behalf of Deborah Chong and Joshua Roberts, individually and as next friends/parents of

, a minor.

With respect to the payment of the Upfront Cash, Plaintiffs stipulate and agree that the United States will not sign an annuity application form, a uniform qualified settlement form, or any equivalent such forms, and that the United States will not pay the Upfront Cash into a qualified settlement fund or an equivalent fund or account, settlement preservation trust, or special or supplemental needs trust. Plaintiffs further stipulate and agree that the Plaintiffs, the Plaintiffs' attorney(s), any Guardian Ad Litem, and the Plaintiffs' representatives (including any structured settlement annuity broker, regardless of whether said broker was retained by them or by someone else, either before, during, or after the settlement) will not attempt to structure the Upfront Cash in any way, form, or manner, including by placing any of the Upfront Cash into any qualified settlement fund or its equivalent. However, nothing in this Paragraph 3.a.(1) precludes Plaintiffs from purchasing non-qualified annuities after Plaintiffs receive the Upfront Cash, but Plaintiffs agree that they will not represent to any person, entity, or agency that they are purchasing qualified structured settlement annuities and Plaintiffs agree they will not attempt to purchase such structured settlement annuities.

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

Page 3 of 21

Plaintiffs and their attorney agree that the Upfront Cash will be deposited in their attorney's client trust account to facilitate the disbursement of the Upfront Cash as provided in the Order approving the settlement. Plaintiffs stipulate and agree that their attorney shall escrow the aggregate face value of any and all currently known liens and currently known claims for payment or reimbursement, including any such liens or claims by Medicaid (including the States of Alaska, Ohio, or any other state) or Medicare, arising out of the subject matter that gave rise to the above-referenced civil action, whether disputed as legally valid or not, and shall not distribute to Plaintiffs any portion of the escrowed amount unless and until said liens and claims have been paid or resolved.

(2) An electronic funds transfer (EFT) in the amount of Three Million Six Hundred and Thirty Thousand Dollars ($3,630,000) (hereinafter "Annuity Premium Amount") to the Brant Hickey & Associates, Inc. Client Trust Account (hereinafter "Brant Hickey") for the purchase of the annuity contract described below in Paragraph 3.b.

(3) An electronic funds transfer (EFT) in the amount of Three Hundred Thousand Dollars ($300,000) (hereinafter "Reversionary Trust Deposit") to Settlement Trust Group/Midland States Bank for deposit in the Reversionary Trust described below in Paragraph 3.c.

(4) The parties agree that any attorneys' fees owed by Plaintiffs relating to their Federal Tort Claims Act matter shall not exceed twenty-five percent (25%) of the Settlement Amount. 28 U.S.C. § 2678. The parties further agree that any such attorneys' fees, along with Plaintiffs' costs and expenses incurred in bringing the above-referenced action, and their costs,

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

expenses, and fees (including all fees if any legal Guardian Ad Litem) associated with obtaining court approval of this settlement on behalf of any minor, incompetent adult, or estate required to sign this Stipulation, shall be paid out of the Upfront Cash paid pursuant to paragraph 3.a.(1) above, and not in addition thereto. The parties agree that any fees, including fees of any legal Guardian Ad Litem, incurred in providing legal services in this matter and in any court proceedings reviewing the settlement for approval purposes shall be considered attorneys' fees and not costs, and shall be subject to the provisions of 28 U.S.C. § 2678.

        b. Based on the following terms and conditions, the United States will purchase the following annuity contract:

        (1)  The United States will purchase an annuity contract from an annuity company rated at least A by A.M. Best rating service, to pay to the Reversionary Trust the sum of Six Thousand and Eighteen Dollars ($6,018) per month, increasing at 2% compounded annually, beginning thirty (30) days from the date of purchase of the annuity and continuing for 50 years certain ("Period Certain") and the life of        .

    In the event the cost of the annuity contract has either increased or decreased by the date of purchase, the annuity payments set forth above shall be adjusted upward or downward to ensure that that the premium cost of the annuity contract is equal to the Annuity Premium Amount and not more or less than that amount.  The monthly annuity payments are based upon the date of birth for        of November 26, 2014, that was provided by Plaintiffs.  If the date of birth is otherwise, the monthly annuity payments will be adjusted accordingly.  Upon the death of        , any payments remaining during the Period Certain shall be made payable to the United

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

States Department of the Treasury and mailed to the Torts Branch, Civil Division, United States Department of Justice, P.O. Box 888, Benjamin Franklin Station, Washington, D.C. 20044, or, upon written notice, any subsequent change of address.

(2) The annuity contract being purchased pursuant to this Paragraph 3.b. will be owned solely and exclusively by the United States and will be purchased through Brant Hickey as specified above in Paragraph 3.a.(2). The parties stipulate and agree that the United States' only obligation with respect to any annuity contract purchased pursuant to this Stipulation and any annuity payments therefrom is to purchase said contract, and they further agree that the United States does not guarantee or insure any of the annuity payments. The parties further stipulate and agree that the United States is released from any and all obligations with respect to an annuity contract and annuity payments upon the purchase of said contract.

(3) The parties stipulate and agree that the annuity company that issues an annuity contract shall, at all times, have the sole obligation for making all annuity payments. The obligation of the annuity company to make each annuity payment shall be discharged upon the mailing of a valid check in the amount of such payment to the address designated by the party to whom the payment is required to be made under this Stipulation. Payments lost or delayed through no fault of the annuity company shall be promptly replaced by the annuity company, but the annuity company is not liable for interest during the interim.

(4) The parties stipulate and agree that the annuity payments cannot be assigned, accelerated, deferred, increased, or decreased by the parties, that no part of any annuity payments called for herein, nor any assets of the United States or the annuity company, are subject

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

to execution or any legal process for any obligation in any manner, and that Plaintiffs shall not have the power or right to sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise.

        (5)  Plaintiffs and Plaintiffs' guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby agree to maintain with the annuity company and the United States a current mailing address for         and to notify the annuity company and the United States of the death of       within thirty (30) days of death. Plaintiffs and Plaintiffs' guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby further agree to provide to the annuity company and the United States a certified death certificate within sixty (60) days of the death of      .

        (6)  Plaintiffs and Plaintiffs' guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby agree to provide to the annuity company and the United States proof of status as to life, death, legal capacity, and legal authority in the form and at the frequency determined by the annuity company, the United States, or both.  Plaintiffs and Plaintiffs' guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby agree the annuity company may delay or otherwise withhold any payment, without interest, until the annuity company has received such proof or proofs of status.  With respect to proof of status of life, Plaintiffs and Plaintiffs' guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby agree to provide such proof annually on or before the anniversary of the date the annuity contract is issued by the annuity company ("Anniversary Date"). In the event the annual proof of living status is not provided to the annuity company and

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

Page 7 of 21

the United States within sixty (60) days of the Anniversary Date, Plaintiffs and Plaintiffs' guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby agree that the annuity company shall take the following action:

(a) During the Period Certain, the annuity company shall continue to make payments to the Reversionary Trust;

(b) After the Period Certain has expired, the annuity company shall suspend all payments until such time as proof of living status is provided to the annuity company and the United States.

c. The United States will establish, as the Grantor, the Reversionary Trust on the following terms and conditions:

(1) The parties agree to the terms, conditions, and requirements of the Reversionary Trust, a copy of which is attached hereto and incorporated by reference.

(2) The parties further agree that the Reversionary Trust requires _____ (hereinafter "Trust Beneficiary") and anyone acting on his behalf to comply with the obligations set forth in Article VIII and that the failure to comply with those obligations may result in the denial, in whole or in part, of requests for the payment of allowable benefits, as defined in Article IX of the Reversionary Trust.

(3) Plaintiffs and Plaintiffs' heirs, executors, administrators, and assigns shall maintain with the Administrator, the Trustee, and the United States a current mailing address, and shall notify the Administrator, the Trustee, and the United States of any event upon which the right of payments from the Trust Estate may depend, including the death of the Trust Beneficiary,

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

Page 8 of 21

within thirty (30) days of the date of such event, and shall provide the Administrator, the Trustee, and the United States with a certified death certificate within sixty (60) days of the death of the Trust Beneficiary.

(4) Upon the death of the Trust Beneficiary, the Trustee shall, to the extent authorized by the terms of said Reversionary Trust, pay allowable charges, expenses, and benefits, and liquidate and distribute the remaining Trust Estate to the United States by check made payable to the United States Treasury and mailed to the following address: Director, Torts Branch (FTCA Litigation Section), Civil Division, United States Department of Justice, P.O. Box 888, Benjamin Franklin Station, Washington, D.C. 20044, or, upon written notice, any subsequent change of address.

4. Plaintiffs and Plaintiffs' guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns hereby accept the terms and conditions of the Stipulation, including the sums set forth above in Paragraph 3.a, the purchase of the annuity contract set forth above in 3.b, and the establishment and terms of the Reversionary Trust set forth above in Paragraph 3.c, in full settlement, satisfaction, and release of any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, including any future claims for survival or wrongful death, and any claims for fees, interest, costs, and expenses, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, including the death of _____, or damage to property, and the consequences thereof, which Plaintiffs or their heirs, executors, administrators, or assigns may have or

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

hereafter acquire against the United States on account of the subject matter that gave rise to the above-captioned action.

Plaintiffs, on behalf of themselves, their respective guardians, heirs, executors, administrators, assigns, predecessors, and successors in interest, do hereby, for good and valuable consideration, the receipt of which is hereby acknowledged, release and forever discharge the United States and its respective officials, agencies, representatives, officers, employees (including individuals and entities covered by 42 U.S.C. § 233), agents, assigns and attorneys, from any and all claims, demands, rights, causes of actions, liens, and all other liabilities whatsoever, whether known or unknown, suspected or unsuspected, that Plaintiffs have had, now have or hereafter may have with respect to the same subject matter that gave rise to the above-captioned action, as well as claims relating to arise out of the subject matter that gave rise to the above-captioned action that could have been but were not alleged in this action.

Plaintiffs and Plaintiffs' guardians, heirs, executors, administrators, and assigns further agree that they are legally responsible for any and all past, present, and future liens and past, present, and future claims for payment or reimbursement by any individual or by any public or private entity, including an insurance company, Medicaid, and Medicare, arising from the injuries and claims that are the subject matter of this action. Plaintiffs stipulate and agree that they will satisfy or resolve any and all such past, present, and future liens or claims for payment or reimbursement asserted by any such individual or entity. Plaintiffs further agree that, no later than thirty (30) days from the date any past, present, or future lien or claim for payment or reimbursement is paid or resolved by Plaintiffs, they will provide to the United States evidence

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

Page 10 of 21

that said lien or claim has been satisfied or resolved and that said lienholder has waived and released such lien or claim.  The evidence required by the terms of this Paragraph may be satisfied by a letter from Plaintiffs' attorney representing to counsel for the United States that such lien or claim has been satisfied or resolved and that the lienholder has waived and released such lien and claim.

Plaintiffs and Plaintiffs' guardians, heirs, executors, administrators, and assigns further agree to reimburse, indemnify, and hold harmless the United States from and against any and all claims, causes of action, liens, rights, or subrogated or contribution interests (whether such claims, causes of action, liens, rights, subrogated interests, or contribution interests sound in tort, contract, or statute) incident to, or resulting or arising from, the acts or omissions that gave rise to the above-captioned action, including claims or causes of action for wrongful death.

5.  This compromise settlement is specifically subject to each of the following conditions:

a. The Attorney General or the Attorney General's designee must approve the terms and conditions of the settlement, as set forth in this Stipulation and the Reversionary Trust, and authorize the attorney representing the United States to consummate a settlement for the amount and upon the terms and conditions agreed upon by the parties, as set forth in this Stipulation and the Reversionary Trust.

b. The parties must agree in writing to the terms, conditions, and requirements of this Stipulation and the Reversionary Trust.  The parties stipulate and agree that the Stipulation and the compromise settlement are null and void in the event the parties cannot agree on the terms, conditions, and requirements of this Stipulation or the Reversionary Trust.  The terms,

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

Page 11 of 21

conditions, and requirements of this Stipulation and Reversionary Trust are not severable and the

failure to agree, fulfill, or comply with any term, condition, or requirement renders the entire

Stipulation and the compromise settlement null and void. The parties must agree to the terms,

conditions, and requirements of this Stipulation and the Reversionary Trust before the United

States Attorney's Office will seek settlement authority from the Attorney General or the

Attorney General's designee.

      c.   Plaintiffs must obtain, at their expense, approval of the settlement by a court

of competent jurisdiction on behalf of       . The terms of any court Order, a draft of

which shall be provided by the United States, are a condition of this settlement. Plaintiffs agree

to obtain such approval(s) in a timely manner: time being of the essence. Plaintiffs further agree

that the United States may void this settlement at its option in the event any such approval is not

obtained in a timely manner. In the event Plaintiffs fail to obtain such court approval(s), the

entire Stipulation and the compromise settlement are null and void. Plaintiffs must obtain such

court approval(s) before the United States Attorney's Office will seek settlement authority from

the Attorney General or the Attorney General's designee.

      d.         must be alive at the time the Reversionary Trust described in

Paragraph 3.c. is deemed established, as defined in Article V of the Reversionary Trust, and at

the time to annuity contract described in Paragraph 3.b. is purchased. In the event of the death of

      prior to the date the Reversionary Trust is deemed established or the date the

annuity contract is purchased, the entire Stipulation and compromise settlement are null and

void.

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child,*
*et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

e.  Plaintiffs must provide the United States with a complete set of the **extant** medical records of                 , (including any independent medical examinations conducted for purposes of this litigation, any and all clinic visits, whether for routine checkups or for treatment and care for any medical condition, injury, disease, etc., any and all hospital and emergency room records, and records of any diagnostic testing) for the 36-month period prior to the date Plaintiffs sign this Stipulation.  Plaintiffs must provide all such **extant** medical records for said 36-month period before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.  In the event said records and reports reveal that                 had or potentially has any such potentially life-threatening or life-shortening diseases or illnesses not caused by the medical care at issue in this action, the United States reserves the right to elect not to consummate the settlement and upon such election by the United States the entire settlement is null and void.

f.  Plaintiffs must obtain a release and waiver of any claim or cause of action (whether sounding in tort, contract, statute, or otherwise) that any alleged tortfeasor, if any, has or may have in the future against the United States arising out of the subject matter of the above-captioned action. This condition is for the benefit of the United States exclusively. The United States will provide the form of Release and Waiver, or any changes to the form required by the United States, to be used by Plaintiffs in obtaining a Release and Waiver from any alleged tortfeasor. Before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee, Plaintiffs must provide the United States with either (i) all such releases and waivers required by this Paragraph 5.f., or (ii) a written

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

representation by Plaintiffs' attorney stating that, after a diligent search of counsel's law firms' records and files, including expert and consultant reports, and of Plaintiffs' records and files, Plaintiffs and their attorney are unaware of any such potential tortfeasor.

           g.  The United States District Court for the Southern District of Ohio must dismiss this action in its entirety with prejudice, with each side bearing its own costs, expenses, and fees, and with the District Court not retaining jurisdiction over the above-captioned action, this settlement, or the United States.

     6.  The parties agree that this Stipulation and the Reversionary Trust, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and Plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

     7.  Plaintiffs shall be solely responsible for full compliance with all applicable Federal, state, and local tax requirements.  Plaintiffs execute this Stipulation without reliance upon any representation by the United States as to tax consequences, and Plaintiffs agree that they are responsible for the payment of all taxes that may be associated with this settlement.  Further, nothing in this Stipulation waives or modifies Federal, state, or local laws pertaining to taxes, offsets, levies, and liens that may apply to this Stipulation or the Settlement Amount proceeds. Plaintiffs execute this Stipulation without reliance on any representation by the United States as to the application of any such law.  Plaintiffs, on behalf of themselves and their guardians, heirs, executors, administrators, assigns, subrogees, predecessors in interest, and successors in interest, understand and agree that this transaction may be reported to the Internal Revenue Service and

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

other government agencies in the ordinary course of the business of the United States and may be subject to offset pursuant to the Treasury Offset Program.

8.  Plaintiffs represent that they have read, reviewed and understand this Stipulation and the Reversionary Trust, and that they are fully authorized to enter into the terms and conditions of this agreement and that they agree to be bound thereby.  Plaintiffs further acknowledge that they enter into this Stipulation and the Reversionary Trust freely and voluntarily.  Plaintiffs further acknowledge that they have had sufficient opportunity to discuss this Stipulation and the Reversionary Trust with their attorney, who has explained the document to Plaintiffs and that Plaintiffs understand all of the terms and conditions of this Stipulation and the Reversionary Trust.

9.  It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party.  All such counterparts and signature pages, together, shall be deemed to be one document.

**WHEREAS,** the parties accept the terms of this Stipulation for Compromise Settlement and Release as of the dates written below:

Executed this _____ day of _____, 2021.
**UNITED STATES OF AMERICA**


By:  _____
      John J. Stark
      Assistant United States Attorney
      Attorney for the Defendant,
      United States of America



*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

Executed this _____ day of _____, 2021.

**WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR, HIGGINBOTHAM & JACOB, PLLC, Attorney for Plaintiffs**


By: _____
     Jamal Alsaffar
     Whitehurst, Harkness, Brees, Cheng, Alsaffar, Higginbotham & Jacob, PLLC
     Attorney for Plaintiffs

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

Page 16 of 21

Executed this __2nd__ day of __March_____, 2021.
**DEBORAH CHONG, Plaintiff**

_____
Deborah Chong, individually
Plaintiff

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

Page 17 of 21

Executed this __2nd__ day of __March_____, 2021.
**JOSHUA ROBERTS, Plaintiff**

_____
Joshua Roberts, individually
Plaintiff

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

Page 18 of 21

Executed this 2nd   day of   March                    , 2021.

**, A MINOR**

By: _____

Deborah Chong, authorized by court order to sign on behalf of                    , a minor

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

Page 19 of 21

Executed this_____day of _____, 2021.
STRUCTURED SETTLEMENT BROKERAGE COMPANY
BRANT HICKEY & ASSOCIATES, INC. (HEREINAFTER "COMPANY")

     I, the undersigned, am duly authorized to sign this Stipulation on behalf of the Company and have furnished written proof thereof to the United States.  I also declare under penalty of perjury that the Company and its employees, agents, and structured settlement annuity brokers are covered by an Errors and Omission insurance policy and a fidelity bond or equivalent insurance coverage, and have furnished to the United States a certificate or proof of insurance for such policies.  By signing this Stipulation, I agree that the Company will accept the Annuity Premium Amount.  I further agree that, within five business days of receipt of the Annuity Premium Amount, the Company will (1) disburse the Annuity Premium Amount to an annuity company(ies), rated at least A by A.M. Best rating service, for the purchase the annuity contract(s) described above in Paragraph 3.b of this Stipulation, and (2) provide to the parties written proof that the Annuity Premium Amount has been accepted by said annuity company(ies).

     I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.


By:    _____
     David Hickey, Structured Settlement Annuity Broker
     On behalf of Brant Hickey & Associates, Inc.

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

Page 20 of 21

Executed this_____day of_____, 2021.
STRUCTURED SETTLEMENT ANNUITY BROKER
DAVID HICKEY (HEREINAFTER "BROKER")

     I, the undersigned Broker, declare that I currently meet the minimum qualifications set forth in 28 CFR § 50.24 to provide structured settlement annuity brokerage services to the United States and that I am currently covered by an Errors and Omissions insurance policy and a fidelity bond or equivalent insurance coverage, and have furnished to the United States a certificate or proof of insurance for such policies. By signing this Stipulation, I agree that the application for any annuity contract and the annuity contract issued by the annuity company will comply with the terms and conditions of Paragraph 3.b of this Stipulation.

     I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.


_____
David Hickey, Structured Settlement Annuity Broker

*Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202
Stipulation for Compromise Settlement and Release (2.19.2021)

**EXHIBIT B**

# Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust For The Benefit of

Irrevocable Reversionary Inter Vivos Grantor
Medical Care Trust FBO
February 19, 2021

# ARTICLE I
## ESTABLISHMENT OF THE TRUST

Pursuant to a *Stipulation For Compromise Settlement And Release* (hereinafter "Stipulation") of a Federal Tort Claims Act (28 U.S.C. § 2677, et seq.) matter, the United States of America (as the "Grantor") establishes this Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust ("the Trust"). The Stipulation is attached hereto and incorporated herein by reference.

# ARTICLE II
## THE BENEFICIARY OF THE TRUST

The Beneficiary of the Trust is                    (SSN:              ) (DOB: November 26, 2014). For purposes of the Trust, the Beneficiary shall act through the Beneficiary's legal representative during any period of minority or legal incapacity. A legal representative is defined for purposes of the Trust as an individual or entity authorized by law or a Court order to act on behalf of the Beneficiary during a period of minority or legal incapacity for purposes of carrying out the terms and conditions of the Trust. For purposes of this Trust, a legal representative shall include the Beneficiary's attorney, parent, legal guardian, guardian, guardian ad litem, and conservator, but shall not include an individual or entity acting pursuant to a power of attorney, provided such attorney, parent, legal guardian, guardian, guardian ad litem, or conservator has the legal authority to act on behalf of the Beneficiary for purposes of carrying out the terms and conditions of the Trust. In the event more than one individual or entity has such authority, the Administrator and the Trustee are entitled to rely upon the signatures, statements, or actions of any one of the legal representatives in carrying out the terms of the Trust in the absence of a Court order to the contrary, provided that such Court order has first been presented to the Administrator, Trustee, and Grantor. Upon reaching the age of majority, as determined by the law of the state in which the Beneficiary resides, the Beneficiary shall comply with that state's guardianship and conservatorship laws.

The Grantor retains a reversionary interest, effective upon the termination of the Trust, as provided in Article XIX of the Trust.

# ARTICLE III
## THE PURPOSE OF THE TRUST

The purpose of the Trust is to pay allowable benefits, as defined in Article IX of the Trust, to or on behalf of the Beneficiary according to the terms and conditions of the Trust. Nothing in the Trust shall be construed to require the Beneficiary to use any particular medical

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

provider or group of medical providers, unless expressly provided to the contrary in Article IX of the Trust.

## ARTICLE IV
## APPOINTMENT OF TRUSTEE AND ADMINISTRATOR

The Grantor appoints Settlement Trust Group/Midland States Bank**,** as the "Trustee" of the Trust and appoints Medical Fund Advisors, Inc., as the "Administrator" of the Trust. The Trustee and the Administrator agree to accept their respective appointments and to carry out their respective fiduciary duties and responsibilities as defined by the terms of the Trust. In the event the same entity is appointed to act as both the Trustee and the Administrator, that entity shall carry out the duties and responsibilities of both the Trustee and the Administrator.

## ARTICLE V
## THE TRUST ESTATE

For purposes of the Trust, the term "Trust Estate" is defined to be the amount the Grantor initially deposits with the Trustee pursuant to the Stipulation, together with any income from Trust Estate investments and any annuity payments, in the event the United States purchased an annuity contract to make periodic payments to the Trust. The Trust and the Trust Estate shall be a secondary payer of allowable benefits based on the terms and conditions set forth herein.

No rights, obligations, duties, or allowable benefits are created or payable pursuant to the Trust unless and until all of the following conditions have been met: (1) each party to the Trust has signed the Trust instrument; (2) the Grantor has deposited with the Trustee the initial sum stated or determined by the terms of the Stipulation; (3) the Trustee has deposited said sum into a separate account opened by the Trustee in the name of the Trust; and (4) the Beneficiary is alive at the time said sum is deposited into said separate account. The Trust shall be deemed established when each and every one of these conditions has been met.

## ARTICLE VI
## THE DUTIES OF THE ADMINISTRATOR

**Section A.**    **Duty to Act as the Administrator**

The Administrator shall act as the Administrator and perform its fiduciary duties and responsibilities as defined by the terms of the Trust. The term "Administrator" includes the present Administrator and any successor of said Administrator, whether by appointment pursuant to the Trust, or by way of merger, consolidation, or transfer of business.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

**Section B.    Duty to Review Requests for Payment of Allowable Benefits**

### 1. Administrator Has Exclusive Duty

The Administrator shall have the exclusive duty and responsibility to receive and review requests for payment of allowable benefits, as defined in Article IX of the Trust.

### 2. Submission of Requests for Payment of Allowable Benefits

All requests for payment of allowable benefits must be submitted to the Administrator. Requests must be submitted and received by the Administrator within ninety days of the date the goods or services for which payment is being requested were provided. Absent good cause being demonstrated by the Beneficiary, the Administrator shall reject and not authorize any request for payment of allowable benefits that is received by the Administrator more than ninety days after the goods or services for which payment is being requested were provided. In the event a request for payment of allowable benefits is submitted to the Trustee (and the Trustee is not also acting as the Administrator), the Trustee shall promptly transfer the request to the Administrator and shall take no further action with respect to the request for payment of allowable benefits unless and until the Trustee has received notification from the Administrator pursuant to Section E, below, to pay an amount from the Trust Estate to a particular payee.

### 3. Documentation Required to be Submitted With Each Request

a. Each request for payment of allowable benefits must be in writing on a form provided by the Administrator. The Beneficiary may submit a request for payment of allowable benefits, or the Beneficiary may authorize the provider of the goods or services to submit a request for payment of allowable benefits directly to the Administrator. The Beneficiary may arrange with the Administrator for the advance authorization of regularly recurring expenses. Except for requests for payment where advance authorization has already been obtained, each request for payment of allowable benefits must be signed by the Beneficiary if legally competent, by the Beneficiary's legal representative during a period of minority, or by an individual or entity authorized by a Court to act on behalf of the Beneficiary in the event said Court has determined after the Beneficiary has reached the age of majority that the Beneficiary lacks the legal capacity to act on his or her own behalf.

b. Each request for payment of allowable benefits must include a written statement from the provider of the goods or services for which payment is being sought, detailing the nature of the goods or services and detailing the charges for such goods or services. The written statement, together with supporting documentation (such as medical records or product information) and billing information, must provide sufficiently detailed information for the Administrator to

determine whether such goods or services are payable by the Trust and to determine the amount to be paid from the Trust Estate. The written statement must specifically indicate whether the charges for the goods or services have been or will be submitted to any source of benefits other than the Trust, whether any portion of the charges has been or will be paid by any other source of benefits, the amount of any payment received, the balance due, and the identity (including name, address, and telephone number) of the other source of payments.

     c. Unless already on file with the Administrator, each request for payment of allowable benefits shall include a written agreement by the Beneficiary to provide the Administrator (and the Trustee, if necessary) with: information; documentation; valid authorizations, including authorizations for the Administrator to submit any request for payment of allowable benefits to another source of benefits, as defined in Section D, below, after the Administrator has determined that the request for payment is otherwise payable by the Trust or to seek reimbursement or to apply for benefits from such other source of benefits; valid releases for medical or billing information; and signatures either required by the terms of the Trust or deemed necessary by the Administrator and the Trustee to carry out their respective duties and responsibilities under the terms of the Trust.

**Section C.**     **Duty to Determine Whether Payment of Request for Allowable Benefits is Authorized by the Trust**

    **1.**     **Determination of Allowable Benefits**

     Upon the receipt of the information, authorizations, releases, and signatures required in Section B, Paragraph 3, above, the Administrator shall commence its review of each request for payment of allowable benefits and the Administrator shall, subject to this Article VI and Article IX of the Trust, determine whether the goods or services for which payment is being sought are allowable benefits under the terms of the Trust. The Administrator has no duty to determine whether the Trust authorizes any payments other than those for allowable benefits: those determinations are to be made by the Trustee within its duties, responsibilities, and powers under Articles VII and X of the Trust.

    **2.**     **Administrator's Determination Based Exclusively on the Terms of the Trust**

     The Administrator's determination of whether a request for payment of allowable benefits is authorized by the Trust shall be based exclusively on the terms of the Trust. However, in determining the necessity for, or reasonableness of, any request for payment of allowable benefits, the Administrator may be guided by making reference to what would be deductible medical expenses under the Internal Revenue Code and such regulations and rulings which are then and there in effect. Notwithstanding any Internal Revenue Code, regulation, or ruling to the

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

contrary, the Administrator shall not pay any allowable benefit unless it is otherwise allowed under the terms of the Trust, even though the expense may be considered a deductible medical expense for tax purposes.

### 3. Exclusions That Apply to Requests for Payment of Allowable Benefits Unless There is an Express Authorization to the Contrary in Article IX

Unless otherwise specifically authorized in Article IX of the Trust, the Administrator shall **not** authorize, and the Trustee shall **not** pay, any of the following:

a. Goods and services received from, provided by, or paid for by any institution or agency of the United States Government.

b. Goods and services, or portions thereof, for which the Beneficiary is not liable for payment or has not been, or will not be, billed or charged; goods and services that were provided prior to the date the Trust is deemed established; goods and services for which an obligation to provide such goods and services was incurred prior to the date the Trust is deemed established; and goods or services that were provided after the date the Trust is deemed terminated.

c. Goods and services which were provided by the Beneficiary's immediate relative or household member, such as spouse (by marriage, common law, or partner), parent, grandparent, child, sibling, or guardian, whether by blood, marriage, adoption, or legal appointment.

d. Goods and services paid by any person or entity, including Medicare or Medicaid, other than the Beneficiary, to the extent that person or entity had a legal obligation to make such payment.

e. Goods and services for which the Beneficiary has been reimbursed or reasonably expects to be reimbursed, regardless of the source of the payment.

f. Investigational or experimental medical goods or services, unless such medical goods or services have been approved by the FDA for investigational or experimental purposes and provided further that such investigational or experimental medical goods or services are being provided to the Beneficiary in the United States. Goods or services related to dental care.

g. Goods or services that the Administrator determines are not medically necessary. For purposes of the Trust, the term "medically necessary" means that the goods or services (i) were prescribed by an individual who is authorized by law to write a prescription; (ii) are consistent with the standards of good medical practice in the United States; (iii) are primarily and customarily used only for a medical purpose; (iv) are generally useful only to a person with an

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

illness, disability, disease, or injury such as the Beneficiary's at the time treatment is being provided; (v) are not primarily for the personal comfort (except that medications or surgeries to treat or relieve physical pain shall not be considered to be for "personal comfort" for the purpose of this definition) or convenience of the Beneficiary, the family of the Beneficiary, or the provider of the goods or services; and (vi) serve a specific therapeutic purpose in the treatment of any of the Beneficiary's illnesses, disabilities, diseases, or injuries.

h. Fees, or any portion thereof, that the Administrator determines to be in excess of the reasonable and customary charge for the goods or services. For purposes of the Trust, the term "reasonable and customary charge" means the prevailing charge made by other providers of such goods or services within the geographic area in which the goods or services are being provided.

i. Treatment solely for cosmetic purposes.

j. In-home attendant care.

k. Non-medical social services; educational and training services; training in activities of daily living; any equipment related to these types of services or training.

1. Habilitative, rehabilitative, physical, speech, occupational, and recreational therapy; any equipment related to such therapies; a membership to a pool, spa, health club, fitness center, gymnasium, or similar type of facility.

m. Counseling of any type.

n. Security systems.

o. Entertainment or other activities of daily living; and any equipment related thereto.

p. Transportation or travel expenses of any type for any purpose.

q. The purchase, rent, or lease of any vehicle of any type; the maintenance of, or modification to, any vehicle; accessories on or additional equipment for any vehicle; or taxes or insurance on any vehicle.

r. The purchase, rent, lease, construction, or modification of any building of any type (including a home or residence) or any other type of structure; construction of any type on any land or real estate; maintenance of or modification to any building of any type, structure, or land; any expenses relating to access to a building of any type, or access within a building of any type;

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

fixtures or accessories on or in any building of any type; taxes on a building of any type; or any insurance covering any land, building, or structure.

s. The purchase, rental, lease, maintenance, or modification of any personal property of any type; or any insurance covering any personal property of any type.

t. Burial and funeral expenses.

u. Goods and services that are not caused by, or not directly related to, the injuries the Beneficiary contended in *Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202 (S.D. Ohio), were caused by the acts or omissions of employees of the United States. A copy of the Complaint filed in said Civil Action shall be on file with the Trustee and the Administrator.

v. Fees, costs, and expenses relating in any way to a guardianship or conservatorship, including, but not limited to, fees, costs, and expenses (including bond premiums) relating to (i) the establishment, administration, or termination of a guardianship or conservatorship or the appointment or removal of a guardian ad litem, guardian, conservator, or the like, (ii) any legal or other proceeding to determine whether the Beneficiary lacks legal capacity, (iii) any legal or other proceeding relating to the interpretation of the Trust or the payment or denial of payment of allowable expenses or expenses relating to the administration of the Trust, or (iv) any legal or other proceeding relating to an objection or challenge to the payment or denial of payment of allowable expenses or expenses relating to the administration of the Trust.

**4.  Deadline for Making Determination**

The Administrator shall complete its review and make its determination within thirty days of receipt of a request that fully and completely complies with the requirements of Article VI, Section B, of the Trust. If the review and determination cannot be made within the thirty-day period, the Administrator shall have, for good cause shown, an additional thirty days to complete said review and to make said determination, provided written notice of such extension is provided to the Beneficiary.

**5.  Reliance on Information Submitted**

In making determinations pursuant to this Section C, the Administrator shall have the right to rely upon the information submitted by the Beneficiary or providers of goods and services. The Administrator shall have no duty or obligation to determine the qualifications of the providers of goods and services or whether any payments made to the Beneficiary are actually used by or for the Beneficiary's benefit. The Administrator is not required to obtain an

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

order or approval from any Court or the approval of the Grantor, except as required by the Trust, in determining whether a request for payment of allowable benefits is authorized, in whole or in part, under the terms of the Trust. The Administrator shall not be liable in money damages for any discretionary payment or other loss that occurs other than through its own fault or negligence.

### 6.    Denial of Requests for Payment of Allowable Benefits

If a request for payment of allowable benefits is denied, in whole or in part, the Administrator shall provide written notice of the decision to the Beneficiary. The notice shall state the reasons for the denial and shall be sent to the Beneficiary within a reasonable period of time, not to exceed fifteen days after the decision is made. The Beneficiary shall have ninety days from the date the Beneficiary receives the written notice of the denial to object to the denial. The Beneficiary waives any objection the Beneficiary has or might otherwise have with respect to the denial by failing to object within the ninety-day period provided above. Objections shall not be unreasonably made.

### 7.    Disputes

If a dispute arises with respect to a request for payment of allowable benefits, the Administrator may refrain from taking any other or further action in connection with the disputed request for allowable benefits until the matter has been resolved.

### Section D.    Duty to Submit Requests for Payment to Other Sources of Benefits

### 1.    Submission of Requests for Payment to Other Sources of Benefits

For each request for payment of allowable benefits determined by the Administrator to be payable from the Trust Estate, the Administrator shall submit the request for payment to any other source of benefits from which the Beneficiary is entitled to benefits or payment before notifying the Trustee under Section E, below, to make a payment from the Trust Estate. When submitting the request to other sources of benefits, the Administrator shall notify the other source that the Trust Estate, as provided in Article V of the Trust, was established by the Grantor as a secondary payer on any request for payment of allowable benefits.

### 2.    Definition of Other Sources of Benefits

For purposes of the Trust, the terms "other source of benefits," "another source of benefits," and "other sources of benefits," are defined to mean any source of benefits or payments other than the Trust Estate, but shall not include any assets owned by the Beneficiary.

Examples of "other source of benefits," "another source of benefits," or "other sources of benefits," shall include, but not be limited to, group or individual health insurance; automobile insurance; federal, state, local, or tribal program or insurance; Workers' Compensation; and liability insurance.

### 3. Procedures in the Event the Other Sources of Benefits Refuse to Pay

In the event another source of benefits to whom a request for payment of allowable benefits has been submitted refuses to pay the request, in whole or in part, the Administrator shall notify the Trustee pursuant to Section E, below, to make a payment from the Trust Estate for the allowable benefit to the extent otherwise authorized by the terms of the Trust. Thereafter, the Administrator shall seek reconsideration of the refusal to pay by the other source of benefits. In the event the other source of benefits reconsiders its refusal and agrees to pay the benefit, the payment from the other source of benefits shall be made payable to the Trust Estate and deposited by the Trustee into the Trust Estate.

**Section E.      Duty to Notify Trustee to Pay Allowable Benefits From Trust Estate**

After the Administrator has determined that a request for payment of allowable benefits is authorized by the terms of the Trust, and to the extent the request has not otherwise been paid by another source of benefits after being submitted pursuant to Section D, above, the Administrator shall notify the Trustee in writing of the amount to be paid from the Trust Estate and the name of the person or entity to whom such payment is to be made.

**Section F.      Duty to Require the Following: Disclosure of Other Sources of Benefits; Application or Enrollment with Other Sources of Benefits for Coverage; Other Disclosures or Documentation, Information, Signatures, or Other Actions**

### 1. Disclosure of Other Sources of Benefits

Within sixty days of the date the Trust is deemed established, and annually thereafter, the Administrator shall require the Beneficiary to disclose to the Administrator the identity of any source of benefits from which the Beneficiary is or may be entitled to payment or benefits for which the Trust is otherwise required to make payment. The term "other source of benefits" is defined in Section D, Paragraph 2, above. The Beneficiary must make a legitimate and reasonable effort to locate and identify all such sources of benefits.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

## 2. Application or Enrollment with Other Sources of Benefits

Whenever the Administrator learns of any other source of payment or benefits that may be available for the payment of any benefits that are otherwise allowed under the terms of the Trust, the Administrator shall determine whether payment of allowable benefits is available from such source. The Trustee shall notify the Administrator if it learns of any other such source of benefits. In the event the Administrator determines that payment of allowable benefits may be available from another source of payment or benefits, the Administrator shall require the Beneficiary to submit an application to the other source of benefits for coverage by that other source. Pursuant to Article X of the Trust, the Trustee is authorized to pay the costs (such as enrollment fees or premiums) of coverage by the other source, provided the Trustee and Administrator have determined that enrollment with such other source and the payment of the cost of coverage from the other source is in the best interests of the Trust Estate and the Grantor concurs. The Trustee shall not pay the cost of any new or current coverage except for that portion of the cost attributable to having the Beneficiary covered.

## 3. Other Disclosures of Information or Documentation, Signatures, or Other Actions

Within sixty days of the date the Trust is deemed established and annually thereafter, or upon request by the Grantor, Trustee, or any annuity company that is making annuity payments to the Trust, the Administrator shall request that the Beneficiary disclose to the Administrator the following:

a. Signatures, authorizations (including but not limited to authorization or permission to visit the Beneficiary), documentation (including but not limited to medical records, medical assessment reports, and any written assessment of the Beneficiary's disabilities, illnesses, or disorders), and information as required by the terms of the Trust or by the Administrator or Trustee to the extent necessary for the Administrator and Trustee to carry out the terms of the Trust;

b. Proof of status as to life, death, legal capacity, and legal authority of the Beneficiary or anyone purporting to act on behalf of the Beneficiary; any such proof shall be in form and at the frequency determined by the Grantor, Trustee, Administrator, or any annuity company making annuity payments to the Trust.

c. In the event the Administrator makes a request pursuant to this Paragraph 3 on behalf of the Grantor, Trustee, or any annuity company that is making annuity payments to the Trust, the Administrator shall forward the Beneficiary's response to the Grantor, Trustee, and the annuity company.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

4.      **Consequences of Beneficiary's Failure to Comply**

a.  In the event the Beneficiary refuses or fails to disclose the information required in Paragraph 1, above, or refuses or fails to apply for benefits from another source of payments or benefits required in Paragraph 2, above, the Administrator shall determine the extent to which the other source of benefits would have otherwise paid for benefits that are otherwise allowed by the Trust. To the extent it appears to the Administrator, in its discretion, that the other source of benefits, upon receiving a valid application for benefits, may have paid, in whole or in part, a request for payment of allowable benefits that would otherwise be allowed by the Trust, the Administrator shall not authorize the payment of the request for payment of allowable benefits from the Trust Estate to the extent the other source would have paid had a valid application been submitted.

b.  In the event the Beneficiary refuses or fails to comply with any request made pursuant to Paragraph 3, above, the Administrator shall not authorize any request for payment of allowable benefits, as defined in Article IX of the Reversionary Trust, unless and until the Beneficiary complies with any such request.

c.  The Trustee is authorized to take any reasonable legal action to enforce the requirements in the Trust that the Beneficiary provide to the Trustee and Administrator any information, documentation, authorizations, access, or signatures required by the terms of the Trust or as requested by the Trustee or Administrator in administering the terms of the Trust.

## Section G.      Duty to Assist the Beneficiary

The Administrator shall provide the Beneficiary with assistance in applying for payment of allowable benefits from the Trust Estate. The Administrator may, in its discretion, provide clerical and technical assistance to the Beneficiary in determining the availability of benefits from any source of benefits and in completing an application to any source of benefits.

## Section H.      Duty to Maintain Files

The Administrator shall obtain and retain in its files a copy of all requests for payment of allowable benefits and supporting documentation, including receipts and itemizations. The Administrator shall permit the Trustee, the Grantor, and the Beneficiary or their designated representatives to examine all such files and documentation.

## ARTICLE VII
## THE DUTIES OF THE TRUSTEE

**Section A.      Duty to Act as the Trustee**

The Trustee shall act as the Trustee and perform its fiduciary duties and responsibilities as defined by the terms of the Trust. The term "Trustee" includes the present Trustee and any successor of said Trustee, whether by appointment pursuant to the Trust, or by way of merger, consolidation, transfer of Trust business, or otherwise.

**Section B.      Duty to Open Separate Account and to Manage the Trust Estate**

The Trustee shall open a separate account in the name of the Trust and deposit into such account the sum received from the Grantor pursuant to the Stipulation. The Trustee agrees to accept, hold, manage, invest, administer, and distribute the Trust Estate according to the terms of the Trust within the powers provided to the Trustee.

**Section C.      Duty to Make Payments From the Trust Estate**

**1.      Payment of Allowable Benefits**

a.  Pursuant to Article VIII of the Trust, the Beneficiary agrees to provide certain signatures, authorizations, documentation, and information that is required by the terms of the Trust or by the Administrator or Trustee to carry out their respective duties under the terms of the Trust.

b.  In the event the Administrator, the Trustee, or both determine that the Beneficiary has failed to provide such signatures, authorizations, documentation, and information when required by the terms of the Trust or when requested by the Administrator or Trustee, the Trustee shall not pay any allowable benefit unless and until the Beneficiary has provided the required signatures, authorizations, documentation, and information.

c.  Upon receipt of all required signatures, authorizations, documentation, and information, and upon receipt of written notification from the Administrator pursuant to Article VI, Section B, of the Trust,  the Trustee shall make payments authorized by the Administrator in the amount and to the payee authorized by the Administrator. The Trustee shall not pay any request for payment of allowable benefits without the express written authorization of the Administrator.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

d.  In making a payment from the Trust Estate, the Trustee shall have the right to rely upon the determinations of the Administrator that a payment is authorized by the terms of the Trust and that the amount to be paid from the Trust Estate and the payee are correct. The Trustee shall incur no liability for disbursements made in reliance on such determinations by the Administrator. The Trustee shall have no duty or obligation to determine the qualifications of the providers of goods and services or whether any payments made to the Beneficiary are actually used by or for the Beneficiary's benefit.

## 2.  Payment of Other Trust Expenses

In addition to making payments pursuant to Paragraph 1, above, for allowable benefits authorized by the Administrator, the Trustee shall also pay the other expenses of the Trust and Trust administration to the extent allowed by the terms of the Trust.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

### 3.      Source of Payments Made From the Trust Estate

Payments authorized by the Trust shall be paid first out of the income generated by the Trust Estate. At the end of each calendar year, any such income that has not been disbursed, expended, reserved, or otherwise accumulated, shall be accumulated and added to the Trust Estate as principal. In the event the income of the Trust Estate is insufficient in any single calendar year to make the payments authorized by the Trust, the Trustee, in its discretion, may invade the principal of the Trust Estate. However, the Trustee may not invade the principal of the Trust Estate by an amount to exceed Twenty Thousand Dollars ($20,000.00) in any single calendar year without giving prior written notice to the Beneficiary and Grantor. The purpose of the notification requirement is to advise the Beneficiary and Grantor and to permit either of them to question payment requests that may jeopardize the long-term viability of the Trust Estate. The mere fact that such notice is given, however, shall not affect the obligation of the Trustee to make payments that are otherwise authorized by the Trust. For the purpose of this Paragraph 3, any annuity payments into the Trust Estate during any calendar year shall be considered income in determining the amount available for expenditure before the Trustee is considered to have invaded the principal of the Trust Estate, but shall not be considered in determining the fees of the Trustee or Administrator unless otherwise allowed under the Trustee's and Administrator's standard schedule of fees. In the event the income and principal of the Trust Estate are insufficient in any single calendar year to make the payments authorized by the Trust, the Trustee shall make payments only to the extent funds are available in the Trust Estate. The Trustee shall not borrow from any source to make payments when the income and principal of the Trust Estate are insufficient in any single calendar year to make the payments authorized by the Trust. In the event the Trust Estate becomes Zero Dollars ($0.00) and there is no income or annuity payments due in the future, the Trust shall be deemed terminated and the Trustee shall close the Trust according to the procedures set forth in Article XIX.

### 4.      Discretion of Trustee in Making Payments

The Trustee is not required to obtain an order or approval from any Court or the approval of the Grantor, except as required by the Trust, in making payments from the Trust Estate. The Trustee shall not be liable in money damages for any payment or other loss that occurs other than through its own fault or negligence. Until the Trustee has received, at the location where the Trust Estate is being administered, written notice of the Beneficiary's death or of any other event upon which the right of payments may depend, the Trustee shall incur no liability for making payments authorized by the Trust.

**Section D.       Duty to Recover Payments**

If subsequent to a payment of an allowable benefit, the Trustee determines that the payment should not have been made or should have been made in a lesser amount or that the Beneficiary has been reimbursed from another source of benefits for such benefit, the Trustee shall offset the amount of such payment to the extent of the overpayment. The Trustee is also authorized to take reasonable legal action as may be necessary to reimburse the Trust Estate for an overpayment or to collect payments from other sources of payment. For purposes of the Trust, the term "overpayment" shall mean any of the following: any payment that should not have been made; any payment that should have been made in a lesser amount; any payment of an expense for which there has been payment or reimbursement from another source of benefits; and any payment of an expense that should have been paid from another source of benefits.

**Section E.       Duty to Maintain Files and Accounts and to Render Statements of Account**

The Trustee shall obtain and retain in its files a copy of the receipts and itemizations for all expenses paid by the Trust Estate. The Trustee shall also maintain a system of accounting and books of account with respect to the income, expenses, and assets of the Trust Estate which conform to the generally accepted principles and practices of accounting. The Trustee shall permit the Grantor, the Administrator, and the Beneficiary or their designated representatives to examine all accounts, files, and documents relating to the Trust and the Trust Estate.

The Trustee shall render a statement of the administration of the Trust Estate to the Administrator, the Grantor, and the Beneficiary. The statement shall be made at least quarterly. Copies of all tax filings, if any, filed on behalf of the Trust Estate shall similarly be furnished. The Grantor and the Beneficiary shall each have ninety days from the date of receipt of each statement to object thereto. If the Grantor timely objects to any payment from the Trust Estate, or to the reasonableness thereof, or the necessity therefore, no such payment or similar payment shall be authorized or made in the future, except on written notice to the Grantor. The failure of the Grantor or the Beneficiary to object to an item on a statement or to a particular payment noted in the statement shall be conclusive as to such item or payment but shall not preclude the Grantor or the Beneficiary from objecting to like items or payments appearing in future statements. Objections shall not be unreasonably made.

The Trustee is authorized to provide a copy of the statement of the administration of the Trust Estate to any Court of competent jurisdiction which may require the same, upon the consent of the Beneficiary.

## ARTICLE VIII
## OBLIGATIONS OF THE BENEFICIARY

(a)  As a condition of both the settlement set forth in the Stipulation and the payment of allowable benefits, the Beneficiary agrees to:

1.  Comply with the terms and conditions of the Trust;

2.  Cooperate with the Administrator and Trustee to the extent necessary for the Administrator, Trustee, or both, to carry out their respective duties and responsibilities;

3.  Submit timely and complete requests for payment of allowable benefits as required by the terms of the Trust;

4.  Provide signatures, authorizations, documentation (including explanation of benefits from health care providers), and information as required by the terms of the Trust or required by the Administrator or Trustee to the extent necessary for the Administrator and Trustee to carry out the terms of the Trust, including but not limited to complying with Article VI, Section F of the Trust;

5.  Provide, upon request by the Grantor, Trustee, Administrator, or any annuity company making annuity payments to the Trust, proof of status as to life, death, legal capacity, and legal authority of the Beneficiary or anyone purporting to act on behalf of the Beneficiary; any such proof shall be in form and at the frequency determined by the Grantor, Trustee, Administrator, or any annuity company making annuity payments to the Trust.

6.  Identify other sources of payments or benefits;

7.  Apply to other sources of payments or benefits for coverage;

8.  Assist the Administrator and Trustee in obtaining payments or reimbursement from other sources of payments or benefits; and

9.  Transmit to the Trust Estate any amount received by the Beneficiary from another source of payments or benefits in reimbursement for, or payment of, an expense that has been paid or will be paid from the Trust Estate; reimburse the Trust Estate any other overpayments or payments erroneously or wrongfully paid.

(b)  The Beneficiary acknowledges and agrees that the failure to comply with the obligations set forth in Subparagraph (a) above may result in the denial, in whole or in part, of

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

requests for the payment of allowable benefits, as defined in Article IX of the Reversionary Trust.

**ARTICLE IX**
**ALLOWABLE BENEFITS**

**Section A.     Definition of Allowable Benefits**

The term "allowable benefits" is defined to mean only those benefits specifically enumerated in Section B below. The term "allowable benefits" is further defined to mean only those specifically enumerated benefits in Section B, below, that (i) are incurred after the date the Trust is deemed established, as defined in Article V of the Trust; (ii) are incurred before the date the Trust is deemed terminated, as defined in Article XIX of the Trust; (iii) are necessary and reasonable; (iv) are caused by, or the consequence of, or are directly related to, the injuries the Beneficiary contended in *Joshua Roberts and Deborah Chong, Individually and as Next Friend of N.R., their Minor Child, et al. v. United States, et al.*, No. 3:19-cv-202 (S.D. Ohio), were caused by the acts or omissions of employees of the United States; and (v) are exclusively for the benefit of the Beneficiary, unless otherwise specifically authorized by the terms of the Trust.

**Section B.     Enumeration of Allowable Benefits**

Subject to Article IX, Section A, above, the Administrator shall authorize and the Trustee shall pay the following enumerated allowable benefits, based upon, and subject to, the terms and conditions set forth in the Trust and in the enumerated allowable benefits below:

**1.     Medical Treatment and Care Outside Beneficiary's Principal Place of Residence**

The Administrator shall authorize and the Trustee shall pay for the Beneficiary's medical treatment and care outside the principal place of residence of the Beneficiary, including, but not limited to, medical treatment and care for the diagnosis, cure, mitigation, or prevention of disease, illness, injury, or disability.  The Administrator shall authorize and the Trustee shall pay for the services of physicians, psychiatrists, psychologists, nutritionists/dietitians, physician's assistants, registered nurses, licensed practical nurses, licensed or certified nurse's aides, radiologists, laboratory technicians, and other similarly licensed or certified health care personnel for the purpose of providing medical treatment and medical care to the Beneficiary outside the principal place of residence of the Beneficiary.

The Administrator shall not authorize and the Trustee shall not pay for any type of care or services, whether such care or services are medical or non-medical, surgical, psychiatric,

18 of 38 Pages

psychological, unskilled nursing care, counseling, companion services, cleaning services, personal attendant services, personal assistant, attendant care, custodial care and services, respite care, in the Beneficiary's principal place of residence or in any other person's home, regardless of the Beneficiary's medical or non-medical condition or needs, except to the extent specifically authorized in Paragraph 2 below.

For purposes of the Trust, term "principal place of residence" means a single family home that is owned, rented, or leased by the Beneficiary, a natural parent of the Beneficiary, or a legal guardian of the Beneficiary.

## 2.      In-Home Attendant Care

a. Subject to the terms and conditions of this Paragraph, the Administrator shall authorize and the Trustee shall pay for in-home attendant care.  For purposes of the Trust, the terms " in-home attendant care" shall be defined as any type of care or services provided to the Beneficiary in the Beneficiary's principal place of residence, including but not limited to medical treatment and medical care, non-medical treatment and care, psychological or psychiatric treatment and care, skilled nursing care (i.e., care that requires a registered nurse or a licensed practical nurse), unskilled nursing care, therapy, counseling, companion services, cleaning services, personal attendant services, personal assistant services, attendant care, custodial care and services, respite care, and all other types of care, services, assistance, attendant care, and support that may be provided to, or is needed by, the Beneficiary in the Beneficiary's principal place of residence (as defined in Paragraph 1, above).

b. The Administrator shall authorize and the Trustee shall pay up to a maximum of ten (10) hours per day of in-home attendant care through November 26, 2036, when the Beneficiary reaches twenty-two (22) years of age.  After November 26, 2036, the Administrator shall authorize and the Trustee shall pay up to a maximum of twenty-four (24) hours per day of in-home attendant care services.

c. The Beneficiary must be physically present in the Beneficiary's principal place of residence at such time as the in-home attendant care services are provided.  Payment is not authorized under Paragraph 2.b if the Beneficiary is not physically present in said principal place of residence at the time such in-home attendant care services are provided.  For any period of time that the Beneficiary is not physically present in the Beneficiary's principal place of residence, including a period of time when the Beneficiary is a patient at a hospital, or is a resident at, or is admitted to, a hospital, nursing home, foster home, foster care facility, residential care facility, licensed group home, long-term care facility, or hospice facility, the Administrator shall not authorize and the Trustee shall not pay for any in-home attendant care under this Paragraph 2.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

d. The Administrator shall authorize and the Trustee shall pay for in-home attendant care under this Paragraph 2 at the skill level of in-home attendant care services that is medically necessary (as defined in Article VI, Section C, Paragraph 3.g., above) and at the reasonable and customary charge (as defined in Article VI, Section C, Paragraph 3.h. above) for that skill level for providing such in-home attendant care services, except that in the event that the person providing in-home attendant care services authorized by this Paragraph 2 is the Beneficiary's parent, guardian, custodian, conservator, relative (including but not limited to sibling, grandparent, or other family member or relation, whether by blood, adoption, or otherwise), or household member (including but not limited to a roommate or housemate) of the Beneficiary, the Administrator shall authorize and the Trustee shall pay such parent, guardian, custodian, conservator, relative, or household member an hourly rate of pay equal to the median hourly rate of pay of a home health aide based on the most recent online wage data available from the United States Department of Labor's Bureau of Labor Statistics for the metropolitan or nonmetropolitan geographic area in which the Beneficiary is physically residing.  See, http://www.bls.gov/oes/current/oessrcst.htm.

e. Except to the extent expressly authorized in this Paragraph 2 and Paragraph 4 below, the Administrator shall not authorize and the Trustee shall not pay for in-home attendant care services regardless of the Beneficiary's medical needs, the type of services being provided, or the person or skill level of the person providing such services.

### 3.      Emergency Room, Hospital, and Residential Care Facility

The Administrator shall authorize and the Trustee shall pay for the cost of the Beneficiary's admission to any hospital or emergency room for acute or emergency medical treatment and care. The Administrator shall authorize and the Trustee shall pay for the cost of admission to a nursing home or other type of licensed residential care facility (including a licensed group home or long-term care facility but not to include a licensed foster home). The cost of admission to any facility authorized in this Paragraph 3 shall include room and board and medical expenses. Except to the extent expressly authorized in this Paragraph 3, the Administrator shall not authorize and the Trustee shall not pay for the cost of admission to or residence at any other type of facility other than stated in this Paragraph 3.

### 4.      Therapy Services

a.  The Administrator shall authorize and the Trustee shall pay for physical, occupational, speech, vision impairment and hearing loss therapies and services necessitated by the Beneficiary's medical condition, provided that the Beneficiary's treating physician orders such therapy and certifies in writing that the Beneficiary is capable of benefiting from such therapies

and provided further that such therapies are administered by licensed health care providers, licensed therapists, or therapists trained in general accepted therapy modalities provided such therapists are subject to supervision.  In the event the Beneficiary is receiving therapy at no cost under any program provided, sponsored, or paid for by the United States, any State of the United States, or any Territory of the United States or District of Columbia, or is receiving therapy provided, sponsored, or paid for by a private program or insurance, the Administrator shall authorize and the Trustee shall pay only the amount necessary to supplement the therapies the Beneficiary is receiving under such statutes, programs, or insurance.

b. The Administrator shall authorize and the Trustee shall pay for the services authorized by this Paragraph 4 even if such services are provided in the home of the Beneficiary, provided that the cost paid for such services while provided at the Beneficiary's home does not exceed the cost of such services had they been provided outside the home.

5. **Prescription Drugs and Medicines; Medical Devices; Medical Appliances; Durable Medical Equipment; Medical Supplies; and Medical Diagnostic Testing**

The Administrator shall authorize and the Trustee shall pay for prescription or over-the-counter drugs and medicines; durable medical equipment; medical devices; medical appliances; and medical supplies. The Administrator shall authorize and the Trustee shall pay for the cost of maintenance on any medical device, medical appliance, or durable medical equipment that was purchased from Trust Estate funds. The administrator shall authorize and the Trustee shall pay for medical and diagnostic imaging, scans, screens, panels or other testing.

Notwithstanding any definition of medical devices, medical appliances, durable medical equipment, or medical therapeutic equipment and supplies to the contrary, the following items shall not be paid under this Paragraph 5:

a. Any expenses relating to a motor vehicle.  The types of expenses precluded by this subparagraph include but shall not be limited to: the purchase, lease, or rent of a motor vehicle; the repair, maintenance, or modification (including any equipment to be installed during such modification) of a motor vehicle; taxes or insurance on a motor vehicle; and all other types of expenses or costs associated with a motor vehicle or the operation of a motor vehicle.

b. Any expenses relating to a home or real estate.  The types of expenses precluded by this subparagraph include but shall not be limited to: the purchase, lease, or rent of a home or real estate; the construction, renovation, modification, repair, or addition to a home or real estate; expenses relating to access to a home or real estate or access or mobility within a home or real estate; fixtures for a home or real estate; insurance or taxes on a home or real estate; and all other

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

types of expenses relating to a home or real estate except as referenced in Paragraph 8, Home Modifications.

      c. Swimming pools, lap pools, spas, whirlpools, or saunas.

      d. The construction, rent, or lease of any facility or structure for any type of therapy or for any other purpose.

      e. Computers, computer hardware, computer software, and computer peripherals, except to the extent the computer or computer hardware has been or will be implanted in the Beneficiary, is a component in such implant or in the Beneficiary, or is a component of a medical appliance or device to maximize the Beneficiary's hearing capabilities and promote hearing acuity.

      The Administrator may make arrangements with a firm such as PMSI (Pharmacy Management Services, Inc., P.O. Box 20248, Tampa, Florida 33622-0248; 1-800-237-7676) or another similar service for advance deposit for drugs and services as may be to the benefit and convenience of the Beneficiary if prescription services are not available through governmental programs or private insurance.

      **6.**    **Transportation**

      The Administrator shall authorize and the Trustee shall pay for reasonably incurred transportation expenses of the Beneficiary (including ambulance hire) primarily for and essential to obtaining emergency medical care, emergency medical treatment, or emergency medical services. The Administrator shall also authorize and the Trustee shall also pay mileage, at the rate allowed by the Internal Revenue Service as a medical cost deduction, incurred exclusively for the purpose of obtaining non-emergency medical treatment and care for the Beneficiary, along with the reasonable cost of lodging and local transportation for the Beneficiary and the Beneficiary's parents or legal guardians, provided that such non-emergency medical treatment and care are provided to the Beneficiary at a location beyond a travel radius of 100 miles from the Beneficiary's principal place of residence as defined in Paragraph 1, above. The Administrator shall not authorize and the Trustee shall not pay for any other transportation expenses.

      **7.**    **Motor Vehicle Allowance**

      The Administrator shall not authorize and the Trust shall not pay for any expenses relating to a motor vehicle.  The types of expenses precluded by this Paragraph include but shall not be limited to:  the purchase, lease, rent, repair, maintenance, or modification (including any

equipment to be installed during such modification) of a motor vehicle; taxes or insurance on a motor vehicle; and all other types of expenses associated with a motor vehicle or the operation of a motor vehicle.

However, to help defray expenses related to the operation of a motor vehicle used to transport the Beneficiary, including the purchase, lease, rent, maintenance, modification, operation, taxes and insurance, the Administrator shall authorize and the Trustee shall pay to the Beneficiary the following vehicle allowances on the terms and conditions stated below:

a.   The maximum sum of Twenty Thousand Dollars ($20,000.00) (hereinafter "Initial Allowance"); and

b.   Every seven (7) years after the date of the Initial Allowance, the maximum sum of $35,000.00 (hereinafter "Subsequent Allowance"), provided, however, that the payment of any Subsequent Allowance after the payment of the Initial Allowance shall be conditioned upon the Beneficiary residing and actually living on a full-time basis in his home or the home of a parent or legal guardian at least 300 days of the 365 days immediately prior to the date the Beneficiary requests a Subsequent Allowance.

The Administrator shall not authorize and the Trustee shall not pay expenses relating to motor vehicles or transportation except to the extent expressly authorized in this Paragraph 7 and Paragraph 6 above.

**8.      Home Modifications**

The Administrator shall not authorize and the Trustee shall not pay for any expenses relating to a home or real estate. The type of expenses precluded by this paragraph include but shall not be limited to:  the purchase, lease or rent of a home or real estate; the construction, renovation, modification, repair, or addition to a home or real estate; expenses relating to access to a home or real estate or access or mobility with a home or real estate; fixtures for a home or real estate; insurance or taxes on a home or real estate; and all other types of expenses relating to a home or real estate. However, to help defray such expenses, the Administrator shall authorize and the Trustee shall pay to the Beneficiary a maximum life-time home modification allowance not to exceed One Hundred Thousand Dollars ($100,000.00) on the terms and conditions stated below:

a. No more than Fifty Thousand Dollars ($50,000.00) of the maximum life-time allowance may be paid prior to the fifth anniversary of the date this Trust is deemed established, as defined in Article V of the Trust; and

b. No portion of the maximum life-time allowance may be paid unless the Beneficiary has been residing and actually living on a full-time basis in his principal place of residence, as defined in Paragraph 1, above, at least 300 days of the 365 days immediately prior to the date the Beneficiary requests a payment pursuant to this Paragraph 8.

**9.    Health Insurance**

The Administrator shall authorize and the Trustee shall pay the costs (such as enrollment fees or premiums) of health insurance coverage for the Beneficiary, provided the Trustee and Administrator have determined that such costs of coverage are in the best interests of the Trust Estate and the Grantor concurs with their determination. In the event the Trustee and Administrator determine under this Paragraph 9, and under Article VI, Section F, Paragraph 2 and Article X, Paragraph 3, that some or all of the cost of health insurance coverage should be paid by the Trust Estate, the fact that the health insurance policy under consideration also covers medical claims that this Trust would not otherwise pay under the terms of Article IX or covers other family members as required by the Affordable Care Act should not be used to reject a request by the Beneficiary for the payment of the cost of enrollment fees or premiums.

**10.    Miscellaneous Expenses**

The Administrator shall not authorize and the Trustee shall not pay miscellaneous expenses of the Beneficiary. For purposes of the Trust, the term "miscellaneous expenses" shall mean any expense of the Beneficiary that is not otherwise specifically authorized by the terms and conditions of the Trust.

**11.    Case Manager**

The Administrator shall authorize and the Trustee shall pay a maximum of 24 hours of case management services during the first year after the date the Trust is deemed established, as defined in Article V of the Trust. Thereafter, the Administrator shall authorize and the Trustee shall pay a maximum of 12 hours per year of case management services. Except to the extent expressly authorized in this Paragraph 11, the Administrator shall not authorize and the Trustee shall not pay for the cost of case management services by any individual, regardless of the Beneficiary's medical needs, the type of services being provided, or the person or skill level of the person providing such services.

# ARTICLE X
## THE POWERS OF THE TRUSTEE

The Trustee shall have the following enumerated powers and all those powers provided by the laws of the Trustee's domicile, provided such powers are not inconsistent with the powers enumerated herein or the terms of the Trust. The Trustee shall exercise these powers in its sole discretion and without license or leave of any Court.

1. To pay allowable benefits from the Trust Estate to the extent authorized by the terms and conditions of the Trust.

2. To employ at its option and with prior consent of the Beneficiary any person or business for the purpose of providing allowable services to or for the Beneficiary, provided the Trustee determines that employment by the Trust directly is more economical than paying a third party to arrange for the provision of such services and that it will not detract from the quality of services provided to the Beneficiary.

3. To pay the cost of enrollment or premiums for benefits from a source of benefits other than the Trust, including health insurance, according to the terms and conditions of the Trust.

4. To pay or reserve sufficient funds to pay all expenses related to the management and administration of the Trust, including all assessments, charges, fees, taxes, or other expenses incurred in the administration, enforcement, or protection of the Trust and the Trust Estate not otherwise precluded by state law or any other provision of the Trust. Such expenses shall include the fees of the Trustee and the Administrator to the extent authorized in Article XIII of the Trust. The Trustee shall not pay any fees, legal or otherwise, any costs, or any expenses relating to the establishment, administration, or termination of a guardianship or conservatorship for the Beneficiary or relating to any proceeding to determine whether the Beneficiary lacks legal capacity. The Trustee shall not pay any fees, legal or otherwise, any costs, or any expenses incurred by either the Beneficiary or Grantor in resolving any disputes, questions, or interpretations arising under the Trust. The Trustee shall not pay any fees, legal or otherwise, any costs, or any expenses incurred by the Beneficiary in seeking or obtaining benefits from any source of benefits other than the Trust, except that the Trustee shall pay the cost of enrollment or premiums for benefits from a source of benefits other than the Trust, including health insurance, according to the terms of the Trust. In the event the Trustee must retain legal counsel to represent the interests of the Trustee, the Administrator, or the Trust Estate in resolving any dispute, question, or interpretation arising under the Trust or to represent the Trustee, the Administrator, or the Trust Estate in the administration or protection of the Trust and the Trust Estate or for the purpose of enforcing the terms of the Trust, the Trustee is prohibited from retaining any attorney or law firm who represents or has represented the Beneficiary or any relative of the Beneficiary

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

or any guardian or conservator of the Beneficiary unless the Trustee can demonstrate to the Grantor by clear and convincing evidence that there is no actual conflict of interest, no apparent conflict of interest, and no appearance of a conflict of interest between said attorney or law firm and the interests of the Grantor. The Trustee must take into account that the establishment of this Trust was part of a settlement of a Federal Tort Claims Act matter filed by the Beneficiary against the United States of America and that the United States of America is the Grantor of this Trust.

     5. To retain any property held in the Trust Estate for as long as the Trustee shall deem it advisable, provided the Trustee takes into account the purpose of the Trust.

     6. To invest and reinvest in, and to acquire by purchase, exchange, or otherwise, intangible property such as stocks, bonds, securities, mutual funds, certificates of deposits, bank savings or checking accounts, foreign or domestic, or interests of participation therein (including common Trust Estate funds and mutual funds associated with the Trustee), without regard to the proportion any such property may bear to the entire amount held without any obligation to diversify, to the extent consistent with the purpose of the Trust and prudent investment rules. In the event the Trust Estate is less than One Hundred Thousand Dollars ($100,000.00) for three consecutive years and there is no reasonable basis to expect that the Trust Estate shall subsequently exceed One Hundred Thousand Dollars ($100,000.00), the Trustee may limit Trust investments to certificates of deposit and bank savings and checking accounts in an FDIC insured financial institution. The Trustee may not receive compensation from internal funds. The Trustee may also use the services of affiliated brokerage services as it deems appropriate in its sole discretion in connection with the purchase or sale of account assets. Any such transactions will be deemed appropriate, even where the Trustee has an underwriter's interest or charges fees or commissions which include a profit, so long as all such transactions are on terms and under circumstances comparable to those generally available through non-affiliated brokers. The Trustee shall attempt to invest all principal sums in excess of One Thousand Dollars ($1,000.00).

     7. To sell (at public or private sale, without application to any Court) any property in the Trust Estate in such manner and on such terms and conditions as it may deem best to the extent consistent with the purpose of the Trust and prudent investment rules.

     8. To vote personally or by proxy any shares of stock or other voting securities at any time held hereunder, and to consent to and participate in any reorganization, consolidation, merger, liquidation, or other change in any corporation whose stocks or securities may at the time be held hereunder.

     9. To commingle the assets of the Trust Estate with the assets of other trusts not owned by or property of the Beneficiary in order to maximize the investment income of the Trust Estate.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

10. Except to the extent prohibited by law, to cause any securities to be registered in the names of its nominees, or to hold any securities in such condition that they will pass by delivery, including the use of custodians and other depositories.

11. To liquidate, compromise, adjust, and settle any and all claims and demands, including taxes, in favor of or against the Trust Estate, for such amounts, upon such terms, in such manner, and at such time as the Trustee shall reasonably deem advisable upon the consent of the Grantor.

12. To allocate to principal all stock dividends and cash in lieu of fractional shares paid as a result of a stock dividend received on stock.

13. To continue to make distributions of income and/or to accumulate the same hereunder until the Trustee shall have received written notice of any event which would affect such distribution and/or such accumulation of income; and the Trustee shall not be liable to any person having any interest in such continuation until the Trustee shall have received such written notice.

14. Except as otherwise specifically provided herein, the determination of all matters with respect to ascertaining what is principal and income of the Trust Estate and the apportionment or allocation of receipts and expenses between these accounts shall be governed, at the election of the Trustee, by the provisions of either the Uniform Principal and Income Act from time to time existing or the Principal and Income Act of the state in which the Trustee resides. Any such matter not provided for herein, or not provided for in the Principal and Income Act elected by the Trustee, shall be determined by the Trustee in the Trustee's sole discretion.

15. To invoke the jurisdiction of a Court of competent jurisdiction, by petition or other procedure, in order to protect the interests of the Trust Estate, to comply with or to enforce the terms of the Trust, or to resolve any dispute or question arising under the Trust in the event the parties to the dispute or question have attempted to resolve the matter informally as required by the Trust and failed. The Trustee is also authorized to take reasonable legal action as may be necessary to reimburse the Trust Estate for an overpayment or to collect payments from other sources of payment.

16. To require proof of the status as to life, death, legal capacity, and legal authority of the Beneficiary or anyone purporting to act on behalf of the Beneficiary. Any such proof shall be on the form and at the frequency determined by the Grantor, Trustee, Administrator, or any annuity company making annuity payments to the Trust.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

# ARTICLE XI
## RESIGNATION OR REMOVAL OF THE TRUSTEE OR ADMINISTRATOR

### Section A. Right of Resignation

The Trustee shall have the right to resign at any time upon giving ninety days written notice of such resignation to the Grantor, the Beneficiary, and the Administrator. The Administrator shall have the right to resign at any time upon giving ninety days written notice of such resignation to the Grantor, the Beneficiary, and the Trustee. An entity that is acting as both the Trustee and the Administrator shall have the right to resign from either or both appointments upon giving ninety days written notice of such resignation to the Grantor and the Beneficiary.

### Section B. Removal of the Trustee or the Administrator

The Grantor shall have the right to remove a Trustee or an Administrator upon sixty days written notice to the Trustee, the Administrator, and the Beneficiary.

### Section C. Return of Unearned Fees

In the event the Trustee or an Administrator resigns or is removed from office, the resigning or removed Trustee or Administrator, prior to leaving the service of the Trust, shall return that portion of payments made to it during the Trust accounting period which represents unearned income. For purposes of the preceding sentence, "unearned income" shall mean the pro rata portion of all payments made to the resigning or removed Trustee or Administrator for which services have not been rendered. In the case of annual payments, this amount shall be determined by multiplying the annual payments by a fraction, the numerator of which is the number of whole months during that period in which services were not rendered, and the denominator of which is 12. In the case of quarterly payments, this amount shall be determined by multiplying the quarterly payment by a fraction, the numerator of which is the number of whole months during that period in which services were not rendered, and the denominator of which is 3.

### Section D. Transfer of the Trust Estate and the Trust Files

A Trustee that resigns or is removed shall transfer and deliver to its successor the then-existing entire Trust Estate in its possession, along with all Trust documents and records in its possession. Upon such transfer, the Trustee shall be discharged as Trustee of the Trust and shall have no further powers, discretion, rights, obligations, or duties with reference to the Trust Estate, and all such powers, discretion, rights, obligations, and duties of the resigning Trustee shall inure to and be binding upon such successor Trustee.

28 of 38 Pages

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

An Administrator that resigns or is removed shall transfer and deliver to its successor the then-existing Trust documents and records in its possession.

The foregoing notwithstanding, nothing contained in this Section D shall be deemed to discharge or release any Trustee or Administrator that resigns or is removed from liability for its acts or omissions.

## ARTICLE XII
## SUCCESSOR TRUSTEE OR ADMINISTRATOR

### Section A. Appointment of Successor Trustee or Administrator

In the event the Trustee or the Administrator resigns, refuses or is unable to act, or is removed, the Grantor shall appoint in writing a successor within sixty days of receiving written notice of resignation or within sixty days of removal.

### Section B. Qualifications of a Successor Trustee

A successor Trustee appointed pursuant to this Article XII shall be a trust company or bank and the successor's fiduciary powers must be regulated by either the Office of the Comptroller or the Currency or the Federal Reserve Bank or the Federal Deposit Insurance Corporation.

### Section C. Duties, Rights, Responsibilities, and Powers of Successors

A successor Trustee or Administrator shall have all the duties, rights, responsibilities, and powers provided by the Trust.

### Section D. Liability of Successors

A successor Trustee or Administrator shall not be liable or responsible in any way for the acts or omissions of any predecessor Trustee or Administrator or for any loss or expense occasioned by any act or omission of any such predecessor. The successor Trustee or Administrator shall be liable for its own acts or omissions in respect to property actually received or duties, responsibilities, and powers assumed by it as the successor. The foregoing notwithstanding, nothing contained in this Section D shall be deemed to discharge or release any predecessor Trustee or Administrator from liability for its acts or omissions.

## ARTICLE XIII
## COMPENSATION OF THE TRUSTEE AND THE ADMINISTRATOR

The Trustee shall receive as compensation for its services such commissions and fees as are payable in accordance with its schedule of commissions and fees in effect from time to time during the period in which its services are rendered, but shall not include any fees for the types of services being rendered by the Administrator unless the Trustee has also been appointed as the Administrator, in which case the fee schedule that applies to the performance of both appointments shall apply. The Trustee's compensation may not be changed without prior written approval of the Grantor. The Administrator shall receive as compensation for its services such compensation as is payable in accordance with its schedule of fees in effect from time to time during the period in which its services are rendered unless the Administrator has also been appointed as the Trustee, in which case the fee schedule that applies to the performance of both appointments shall apply. The Administrator's compensation may not be changed without prior written approval of the Grantor.

## ARTICLE XIV
## BOND EXCUSED

The Trustee and any successor Trustee shall not be required to give bond or any other undertaking for the faithful performance of its duties hereunder, any law to the contrary notwithstanding.

## ARTICLE XV
## SPENDTHRIFT PROVISION

No title or interest in the money or other property constituting the Trust Estate, or in any income accruing therefrom or thereon, shall vest in the Beneficiary during the continuance of the Trust Estate. The Beneficiary shall have no right, power, or authority to anticipate any income of the Trust Estate, payments into the Trust Estate, or any payments from the Trust Estate; or to alienate, convey, transfer, or dispose of the same or any interest therein or any part thereof in advance of payment. None of the principal or income of the Trust Estate, payments into the Trust Estate, nor any payments from the Trust Estate shall be involuntarily alienated by the Beneficiary or be subject to attachment, execution, or levy, or taken upon any process for any debts that the Beneficiary may have contracted, or in satisfaction of any demands or obligations that the Beneficiary may have incurred.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

# ARTICLE XVI
## NOTIFICATION REQUIREMENTS

All notices, statements, statements of account, objections, filings, service of legal papers, and mailings required or permitted by the provisions of the Trust shall be in writing and shall be sent, on a timely basis, to the following addresses or, upon written notice, any subsequent change of address:

GRANTOR:
Director, Torts Branch (FTCA Staff)
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
(202) 616-4400
(202) 616-5200, fax

TRUSTEE:
Settlement Trust Group/Midland States Bank
The Irrevocable Reversionary Inter Vivos
Medical Care Trust FBO Noah Roberts
22 W Washington Street, Suite 1500
Chicago, IL  60602
(414) 258-3175

ADMINISTRATOR:
Medical Fund Advisors
125 John Robert Thomas Drive
Exton, PA 19341-2655
(610) 594-3533

BENEFICIARY:

c/o Deborah Chong & Joshua Roberts
740 Silver Saddle Rd
Monument, CO 80132
(847) 899-6482

31 of 38 Pages

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

The Trustee, the Administrator, the Grantor, and the Beneficiary shall each be responsible for providing each other with timely written notice of any change in address or phone number. Any notification shall be deemed given when posted by regular United States mail addressed to the last known address. Service of any legal papers shall comply with the rules of the Court in which the action or proceeding is filed and shall be made upon all parties to the Trust at the addresses provided above or any subsequent change of address that has been provided, unless a party is represented by counsel, in which case service shall be upon counsel.

The Beneficiary shall give timely written notice of a guardianship or conservatorship or change thereof. In the event of the death of the Beneficiary, the Beneficiary's legal representative, guardian, conservator, or guardian ad litem shall provide to the Administrator, Trustee, and Grantor notice of the death and a certified death certificate within the time provided in the Stipulation.

## ARTICLE XVII
## FORUM FOR DISPUTES AND APPLICABLE LAW

### Section A.     Dispute Resolution and Court of Competent Jurisdiction

If a dispute arises over the terms or administration (including investments) of the Trust, the Grantor, Trustee, Administrator, and Beneficiary shall first try to resolve the dispute informally among themselves before litigating the matter. If the dispute cannot be resolved informally, the Grantor, Trustee, Administrator, or Beneficiary may have the dispute resolved by any state Court (which shall not include Tribal Courts, small claims courts, or probate/guardianship/conservatorship courts) or federal Court of competent jurisdiction. However, such state Court or federal Court shall not have the right to alter, amend, or change the terms or conditions of the Trust. Any fees (including attorney's fees or guardian/conservator fees), expenses, or costs incurred by the Grantor or the Beneficiary in resolving any dispute arising under the Trust shall not be a proper charge against the Trust Estate; however, the Court may order payment of costs, fees, and expenses to the extent otherwise authorized by law.

### Section B.     Applicable Law

The Trust is a federal contract and is to be construed according to federal law. To the extent not contrary to the terms and conditions of the Trust, the duties of the Administrator shall be construed according to the laws of the state in which the Administrator is domiciled and the duties and powers of the Trustee shall be construed according to the laws of the state in which the Trustee is domiciled. However, notwithstanding any state or federal law to the contrary, no Court shall have the right to alter, amend, or change the terms or conditions of the Trust.

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

## ARTICLE XVIII
## REVOCATION OR AMENDMENT

The Trust is irrevocable and the terms shall not be amended, modified, altered, or changed in any respect.

## ARTICLE XIX
## TERMINATION OF THE TRUST

### Section A.    Terminating Event

For purposes of the Trust, the "terminating event" shall be defined as the death of the Beneficiary or when the Trust Estate becomes Zero Dollars ($0.00) and there are no income or annuity payments due in the future, whichever occurs first. Upon the occurrence of either terminating event, the Trust shall be deemed terminated.

### Section B.    Payments Authorized After Terminating Event

Upon the death of the Beneficiary, the Trustee shall pay any allowable benefits authorized by the Administrator to the extent there are sufficient funds in the Trust Estate, provided that the goods or services for which payment is requested were incurred before the date of the Beneficiary's death and provided further that the request for payment was properly submitted to the Administrator for review within ninety days of the date of the death of the Beneficiary. The Administrator shall not authorize and the Trustee shall not pay any expense that was not properly submitted to the Administrator within ninety days of the date of the death of the Beneficiary. In the event any allowable benefit is payable on a monthly basis, the Trustee shall pay only the pro rata share for the month of the Beneficiary's death. The Trustee shall also pay any expenses of management and administration, including the fees of the Trustee and Administrator. In the event there are insufficient funds to pay both the expenses of management and administration and allowable benefits, the Trustee shall first pay the expenses of management and administration. The Administrator shall not authorize and the Trustee shall not pay for burial or funeral expenses.

### Section C.    Distribution of the Trust Estate

After the Trustee has paid all allowable benefits incurred before the date of the Beneficiary's death and properly submitted to the Administrator within ninety days of the date of death of the Beneficiary, along with all taxes, assessments, expenses, and charges incident to the management and administration of the Trust and the Trust Estate, the Trustee shall expeditiously liquidate and distribute the remaining Trust Estate, including any current and accumulated

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

income, to the Grantor by check made payable to the United States Treasury and delivered to the Grantor at the address on record with the Trustee, along with a final statement of account. Upon making this final distribution and accounting to the Grantor, the Trust shall be deemed terminated and the Trustee shall immediately close the account.

## ARTICLE XX
## SIGNATURES

It is contemplated that the Trust may be executed in several counterparts, with a separate signature page for each party. All such counterparts and signature pages, together, shall be deemed to be one document.

Executed this _____ day of_____ 2021
**GRANTOR:**
**UNITED STATES OF AMERICA**


By: _____
       John J. Stark
       Assistant United States Attorney
       Attorney for Defendant,
       United States of America

34 of 38 Pages

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

Executed this _____ day of_____ 2021

**TRUSTEE:**

Settlement Trust Group/Midland States Bank

By: _____

35 of 38 Pages

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

Executed this _____ day of _____ 2021

**ADMINISTRATOR:**

Medical Fund Advisors, Inc.


By: _____

36 of 38 Pages

Executed this 2nd day of March 2021

**BENEFICIARY:**

Date of Birth: November 26, 2014

SSN:

By: _____

Deborah Chong, as Parent and Natural Guardian of
, Beneficiary

By: _____

Joshua Roberts, as Parent and Natural Guardian of
, Beneficiary

37 of 38 Pages

**APPROVED BY ATTORNEY FOR BENEFICIARY AND PARENTS OF BENEFICIARY:**

Executed this ___3rd___ day of ___March___ 2021

_____
Jamal Alsaffar
Whitehurst, Harkness, Brees, Cheng, Alsaffar, Higginbotham & Jacob, PLLC
Attorney for Beneficiary and parents of Beneficiary

38 of 38 Pages

Irrevocable Reversionary Inter Vivos
Grantor Medical Care Trust FBO
February 19, 2021

**EXHIBIT C**

RE:                    , a minor

## AFFIDAVIT OF DAVE HICKEY

Now comes David Hickey, being duly sworn, and states as follows:

1. I am CPCU, CEO, and Managing Partner of Brant Hickey & Associates, Inc. located at 20397 Route 19, Suite 300, Cranberry Township, PA 16066.

2. Brant Hickey & Associates, Inc. will serve as the broker in the purchase of a structured settlement annuity for                    a minor, as a part of the settlement in the above referenced matter.

3. The defendant shall facilitate a tax-free structured settlement for the benefit of .                    . The structured settlement will be tax-free in accordance with Internal Revenue Code Section 104(a)(2). None of the periodic payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered.

4. The present value of Three Million Six Hundred Thirty Thousand Dollars and Zero Cents ($3,630,000.00) will be paid to Brant Hickey & Associates, Inc. to fund the purchase of an annuity with Berkshire Hathaway Life Insurance Company of Nebraska.

5. The annuity will be purchased from Berkshire Hathaway Life Insurance Company of Nebraska, whose A.M. Best rating is A++.

6. The internal rate of return for this annuity is 3.34%; subject to change should a delay in funding occur.

By: _____
     David J. Hickey, CPCU
     Brant Hickey & Associates, Inc.

NOTORY PUBLIC

Personally appearing before me on March _17_, 2021, the above-named individual David J. Hickey, and made oath that the foregoing statements are true to the best of his knowledge and belief.

_____
NOTORY PUBLIC

Commonwealth of Pennsylvania

Notarial Seal
EILEEN M HORNE – Notary Public
CRANBERRY TWP, BUTLER COUNTY
My Commission Expires Oct 29, 2021

**EXHIBIT D**

**FILED**
GREENE COUNTY, OHIO

**PROBATE COURT OF GREENE COUNTY, OHIO**
**THOMAS M. O'DIAM, JUDGE**

JAN 2 3 2019

THOMAS M. O'DIAM
JUDGE PROBATE DIVISION
COURT OF COMMON PLEAS

IN THE MATTER OF

CASE NO. ___10366M___

## ENTRY APPROVING ESTABLISHMENT AND FUNDING
## OF SPECIAL NEEDS TRUST

On this 23rd day of January, 2019, this cause came on to be heard upon the

motion of the Guardian and parents of                          and the evidence, and the

Court being fully advised in the premises, hereby (1) approves the establishment of the

                          Irrevocable Special Needs Trust, effective January 17, 2019, a

copy of which was attached to the motion, and (2) orders the funding of the trust with all

of the net proceeds allocated for the benefit of                          from his recent

personal injury settlement (exclusive of funds allocated to the Irrevocable Reversionary

Inter Vivos Grantor Medical Care Trust created by the United States), including

designation of the trust as the payee under any installment annuity contracts payable for

the benefit of the minor pursuant to his settlement (exclusive of installment annuity

contracts payable to the Irrevocable Reversionary Inter Vivos Grantor Medical Care

Trust created by the United States).  Such trust shall be further administered for the

benefit of                          without further supervision or jurisdiction of this Court,

unless later requested by the beneficiary, his parents or guardians, or the trustee.

IT IS SO ORDERED,

Thomas M. O'Diam, Probate Judge

## IRREVOCABLE SPECIAL NEEDS TRUST

THIS TRUST is effective the 17th day of January, 2019, and is established by **Deborah Chong and Joshua L. Roberts,** parents of ⸺, with **First National Trust Company**, as Trustee (herein referred to as the "Trustee") and **National Distribution Consultants, LLC,** as Distribution Director (herein referred to as the "Distribution Director"). The trust created hereunder is intended to be a trust for the sole benefit of ⸺ (herein referred to as " ⸺") described in 42 U.S.C. §1396p(d)(4)(A) and §5163.21(F)(1) of the Ohio Revised Code.

### Article 1
### ESTABLISHMENT OF TRUST

**1.1.** <u>Establishment of Trust</u>. Deborah Chong and Joshua L. Roberts, parents of ⸺, hereby establish this special needs trust (the "Trust") for the benefit of ⸺, and the Trustee agrees to hold, administer, and distribute the Trust estate in accordance with the provisions hereof for the benefit of ⸺.

**1.2.** <u>Trust Assets</u>. The Trust is to be initially funded with ten dollars ($10) from Deborah Chong and Joshua L. Roberts, receipt of which is acknowledged by the Trustee. The Trust is to be further funded with all of the proceeds from ⸺ personal injury settlement, as ordered by the Probate Division of the Court of Common Pleas for Greene County, Ohio and such other assets as ⸺ or any other person may choose to transfer to the Trustee; provided, however, the Trustee may accept or decline additional assets of any kind from any person and add such further assets to the Trust estate hereunder.

**1.3.** <u>Irrevocability</u>. This Trust shall be irrevocable. No person shall have any power to amend, alter or revoke any provisions of the Trust, except as limited and permitted in Article 4.4.

**1.4.** <u>Distribution Director</u>. The term "Distribution Director" as used herein means National Distribution Consultants, LLC, or such other entity as may subsequently be appointed to serve as a successor Distribution Director.

### Article 2
### USE AND DISTRIBUTION OF TRUST ESTATE

**2.1.** <u>Discretionary Distributions</u>. The Trustee shall have absolute discretion from time to time to distribute to or apply for the benefit of ⸺ such portions or all of the income or principal as the Distribution Director may direct;

provided, however, that the Distribution Director generally shall not direct any distribution which would render          ineligible for a government assistance program for which          is otherwise qualified, including, but not limited to, the Supplemental Security Income program, the Medical Assistance program, and similar or successor programs. During the term of the Trust,          's interests and welfare shall be paramount. The distributive discretion of the Trustee is intended to be of the broadest scope permitted by the law of trusts to the end that no person claiming any interest hereunder will have any ground to complain of distributions made or withheld in good faith.          shall have no right to compel the Trustee to make a distribution to him or for his benefit.

      **2.2.** <u>Method of Distribution</u>. Although the Trustee's discretion shall not be limited by this provision, it is recommended that the Trustee not make cash distributions directly to          but that, in general, the Trustee should use the Trust estate for          only by making expenditures directly to the vendors of any goods or services provided to          , by making distributions in kind to          , and by allowing          to use tangible assets comprising the Trust estate.

      **2.3.** <u>Alienation</u>. No interest in the income from or principal of any portion of the Trust estate shall be subject to any form of alienation or hypothecation by any beneficiary without the express consent of the Trustee, nor shall any such interest or property otherwise be or become subject to the claims or liens of any person other than a beneficiary until such time as the property has actually been distributed in accordance with the terms of this Trust. This prohibition is intended to prevent all voluntary and involuntary dispositions of any part of the Trust estate in any manner other than in accordance with the provisions hereof or by a beneficiary's disclaimer, expressly including the creation of any enforceable claims, liens, or attachments of any kind in any such interest or property by operation of law or through any legal process.

**Article 3**
**TERMINATION**

      **3.1.** <u>Termination</u>. The Trust shall terminate at          's death, the right to any income then accrued but not received shall be added to principal, and the principal shall be distributed as follows:

      **(a)** The Trustee shall distribute the minimum amount of the remaining principal that under applicable law must be distributed to any state or states of the United States in respect of the amount of the total of medical assistance paid on behalf of          by such state or states under any state plan established under Title 42 of the United States Code in order to qualify this Trust for exemption pursuant to Section 1396p(d)(4)(A) of such title. If          has lived in more than one state, the funds remaining in the trust are to be

2

distributed to each state in which       received Medicaid, based on the state's proportionate share of the total amount of Medicaid benefits paid by all of the states on       behalf.

**(b)** The Trustee shall distribute all principal that remains after satisfaction of the foregoing clause to or for the benefit of such individuals, persons or entities as       may appoint in his Will by specific reference to the exercise of this general power of appointment. If he makes no such appointment, or if he appoints less than all of the principal subject to such appointment, all remaining principal shall be distributed to his estate.

## Article 4
## DUTIES AND POWERS OF TRUSTEE

**4.1.** <u>Generally</u>. The Trustee shall have all of the powers and duties conferred or imposed on trustees by law, including, but not limited to, those powers enumerated below. Except as otherwise provided herein, distributions may be made in cash, in kind, or partly in each, and any assets distributed in kind shall be valued and deemed to satisfy each distribution to the extent of their values as of the date or dates of distribution. The Trustee shall not be required to furnish bond nor to obtain leave or confirmation from any person whatever before exercising or performing any such powers and duties. No person dealing with the Trustee shall be obligated to inquire into the Trustee's authority for any action proposed, and the receipt of the Trustee for any payment or property shall constitute a complete acquittance to the payor or transferor for the payment or property and its proper application. The Trustee at all times shall be obligated to act in good faith and to exercise reasonable prudence.

**4.2.** <u>Restrictions</u>. Each power and duty of the Trustee shall be limited and restricted by the provisions of applicable law which cause the assets of the Trust to be exempt under Title 42 of the United States Code as aforesaid and under the applicable provisions of any governing state law, and shall not be exercised in any manner or to any extent that would be inconsistent with the requirements of, or that would cause the disqualification of, the Trust under such provisions. Notwithstanding anything to the contrary in this instrument, any provision or power in this trust instrument which is contrary to the requirements for exemption of the trust under 42 U.S.C. §1396p(d)(4)(A) or under the applicable provisions of any governing law, shall be null and void and of no effect.

**4.3.** <u>Specific Powers</u>. The powers of the Trustee shall include the following powers:

**(a)** To keep and retain any or all investments or property, real, personal or mixed, in the form as they may be at the time they come into the custody of the Trustee, regardless of the character of same or whether they are

3

such as then would be authorized by law for investment by trustees or whether a disproportionately large amount of the Trust estate remains invested in one or more types of property, for such time as the Trustee shall deem best, and to dispose of such property by sale, exchange, or otherwise as and when the Trustee shall deem advisable, and to petition a court for approval with respect to any distribution or investment of trust assets, with such cost to be paid for by the trust as an administrative expense of the trust;

(b) To sell, assign, exchange, transfer and convey or otherwise dispose of any or all of the investments and property, either real, personal or mixed, which may be included in or may at any time become part of the Trust estate, upon such terms and conditions as the Trustee may deem expedient and proper, and for the purpose of selling, assigning, exchanging, transferring or conveying the same, to make, execute, acknowledge and deliver any and all instruments of conveyance, deeds of trust, or assigns in such form and with such warranties and covenants as the Trustee may deem expedient and proper; and in the event of sale, conveyance, exchange or other disposition of any of the Trust estate, the purchaser shall not be obligated in any way to see to the application of the purchase money or other consideration passing in connection therewith;

(c) To lease any or all of the real estate, which may be included in or at any time, become a part of the Trust estate, which lease or leases may extend beyond the term of the Trust;

(d) To invest and reinvest any money, whether income or principal, in bonds, stocks, notes, real estate mortgages, securities, life insurance policies, or in any other property, real or personal, or in a common trust fund, without being limited by any laws regarding investments by trustees now or hereafter in effect, including, if applicable, interest-bearing accounts in or certificates issued by a Trustee's banking department, securities underwritten by syndicates of which a Trustee is a member, but are not purchased from the Trustee, and mutual fund shares where a Trustee, an affiliate, parent or subsidiary thereof, acts as investment advisor;

(e) To employ the services of other departments or divisions of the Trustee or of any affiliate of the Trustee in connection with the performance of its duties hereunder, including, but not limited to, effecting securities transactions through an affiliated broker and purchasing insurance through an affiliated agency (the parties to this Trust understand that the Trustee or its affiliate may have an underwriter's stake in such transaction or may charge fees or commissions for services rendered which include a profit and the parties specifically authorize the Trustee to undertake such transactions on behalf of the trust estate and to pay such fees for commissions from the trust estate so long as

4

the transactions are on terms and under circumstances comparable to those generally available through nonaffiliated entities);

      **(f)** To vote any stocks, bonds, or other securities held by the Trustee at any meetings of stockholders, bondholders, or other security holders, and to delegate the power to do so to attorneys in fact or proxies under power of attorney, restricted or unrestricted;

      **(g)** To borrow money without personal liability, for such periods of time and upon such terms and conditions as to rates, maturities, renewals and security, as the Trustee shall deem advisable, including from itself or any subsidiary in the case of a corporate Trustee, for the purpose of paying debts, taxes or for any other purpose in the administration of this Trust; and to mortgage or pledge such portion of the Trust as may be required to secure such loan or loans and as maker or endorser to renew existing loans;

      **(h)** To compromise, adjust, arbitrate, sue or defend, abandon, or otherwise deal with and settle claims in favor of or against the Trust, as the Trustee shall deem best and to refrain from taking any such action until indemnified to the Trustee's satisfaction;

      **(i)** To determine in a fair and reasonable manner whether any part of the Trust estate, or any addition or increment thereof, is income or principal, or whether any cost should be charged against income or principal, or partially against income and partially against principal;

      **(j)** To repair, alter, improve, renovate, reconstruct and demolish any buildings on real estate held by the Trustee, and to construct buildings and improvements thereon;

      **(k)** To employ and compensate, out of the principal or the income, or both, as the Trustee shall deem proper, agents, accountants, brokers, attorneys in fact, attorneys at law, tax advisors, realtors, and other assistants and advisors deemed by the Trustee appropriate for the proper administration of the Trust estate, and to do so without liability for any neglect, omission, misconduct, or default of any such agent or professional representative, provided they were selected and retained with reasonable care;

      **(l)** To rely upon any affidavit, certificate, letter, notice, telegram, or other paper, or upon any telephone conversation, believed by the Trustee to be genuine, and upon any other evidence believed by the Trustee to be sufficient, and to be protected and saved harmless in all payments or distributions upon such a condition;

5

(m) To receive, apply for, own, and maintain life insurance on the life of ι, to pay for the premiums on such insurance out of the income or principal of the Trust, and to exercise all rights contained in said insurance policies; to obtain and carry public liability, property damage, health, and accident insurance, and such other insurance contracts as the Trustee shall deem advisable to protect the Trustee, the Trust estate, and any beneficiary hereunder against any and all hazards;

(n) To keep any property comprising part of the Trust estate in any place or places within the United States or abroad, either with a depository or custodian or otherwise;

(o) To use and expend trust income and/or principal for conducting environmental assessments, audits and site monitoring to determine compliance with any environmental law or regulation thereunder; take appropriate remedial action to contain, clean up or remove any environmental hazard including a spill, release, discharge, or contamination, either on the Trustee's own accord or in response to an actual or threatened violation; institute, contest or settle legal proceedings concerned with environmental compliance; comply with local, state or federal agency orders or court orders directing an assessment, abatement, or cleanup of any environmental hazards; employ agents, consultants, and legal counsel to assist or perform the above undertakings; and to charge expenses incurred by the Trustee under this paragraph against income or principal as the Trustee shall determine; and

(p) To do all other acts and things not inconsistent with the provisions of this instrument which the Trustee may deem necessary or desirable for the proper management of the Trust herein created, in the same manner and to the same extent as an individual might or could do with respect to his or her own property.

**4.4.** Amendments. Notwithstanding anything to the contrary contained in this instrument, in the event that, due to a change in governing law or pursuant to an authoritative interpretation of the laws then governing ι's eligibility for assistance under available governmental programs, the Trustee believes it to be in the best interest of      and reasonably necessary for      to maintain or achieve such eligibility, then the Trustee may make such amendments to this Trust instrument as are necessary and appropriate to accomplish such purposes. The Trustee shall incur no liability to      or any other person or entity who or which may have an interest herein for the exercise or failure to exercise this power of amendment if the Trustee has acted in good faith and upon advice of counsel.

**4.5.** Assistance Programs. It is acknowledged that the Trustee is a financial institution and is neither licensed nor skilled in the field of social services

6

with respect to public or private assistance programs.          and his representatives, or the Distribution Director, or such other professional or social service agencies retained by the Trustee, if any, shall be responsible for identifying, and obtaining assistance or benefits from, programs that may be of social, financial, developmental, or other assistance to          , including any federal, state, local or other private or public programs that have been established to assist individuals with disabilities or handicaps. The Trustee will cooperate and assist in the process but shall have no duty or responsibility to determine which programs are available to          or to seek or to obtain such assistance on his behalf. The Trustee shall not, in any event, be liable to          or to any other person or entity with respect to any aspect of          's eligibility for such assistance benefits or programs, including, but not limited to, the failure to identify each and every program or resource that might be available to          .

        **4.6.** <u>Distribution Director</u>. The Distribution Director acting hereunder shall have the following functions, authorities, and immunities:

        **(a)**    Serve as the primary contact point between          and his guardian and the Trustee, and interact with the Trustee regarding issues involving          or administration of the Trust;

        **(b)**    Determine the appropriateness of accessing Social Security Disability, Supplemental Security Income, Medicaid, Medicare and any other insurance or government benefits for          , and evaluate the possible impact that any distribution of principal and income might have on the eligibility of          for such government assistance benefits;

        **(c)**    Facilitate, approve and/or disapprove distribution requests, and direct the Trustee regarding the payment or non-payment of distributions or courses of distributions;

        **(d)**    Oversee the distributions and receipts of the Trust, keep records of distribution requests and decisions, and produce required reports regarding distributions from the Trust;

        **(e)**    Have authority to execute documents related to the purchase, sale, construction or maintenance of Trust real estate.

        **(f)**    Have access to all information regarding this Trust and full communication with all representatives of Trustee who are involved with implementation of this Trust, and receive all statements of Trust activity prepared by Trustee;

**(g)**    Consult at least annually with the Trustee on a general policy regarding sales, leases, exchanges and investment of Trust assets with authority to approve/authorize the sale or purchase of real estate; and

**(h)**    Petition a court for approval with respect to any distribution of trust assets, with such cost to be paid for by the trust as an administrative expense of the trust.

The Distribution Director shall be subject to the fiduciary obligations generally imposed upon trustees under the laws of the State of Ohio.  The Distribution Director shall not be required to furnish bond nor to obtain leave or confirmation from any person whatever before exercising or performing any such powers and duties.  No person, firm, partnership or corporation dealing with the Trustee shall be under any obligation whatsoever to ascertain whether or not the foregoing provisions of this Article have been complied with by the Trustee.

**4.7.**    <u>Indemnification</u>.  The Trustee and each of its agents and employees, including the heirs, successors, assigns, and personal representatives of its agents, are hereby indemnified by the Distribution Director against all claims, liabilities, fines, or penalties, and against all costs and expenses, including attorneys' fees and disbursements and the cost of reasonable settlements, imposed upon, asserted against or reasonably incurred thereby in connection with or arising out of any claim, demand, action, suit, or proceeding in which he, she, or it may be involved by reason of being or having been the Trustee or affiliated with the Trustee as set forth above, whether or not he, she, or it shall have: continued to serve as such at the time of incurring such claims, liabilities, fines, penalties, costs, or expenses or at the time of being subjected to the same.  However, the Trustee and each of its, agents and employees, including their heirs, successors, assigns, and personal representatives of it agents, shall not be indemnified with respect to matters as to which he, she, or it shall be finally determined to have been guilty of willful misconduct in the performance of any duty by a court of competent jurisdiction.  This right of indemnification shall not be exclusive of, or prejudicial to, other rights to which the Trustee and each of its agents and employees, including the heirs, successors, assigns, and personal representatives of its agents, may be entitled as a matter of law or otherwise.

**4.8.**    <u>Liability for Environmental Hazards</u>.  The Trustee shall not be liable for any loss or depreciation in value sustained by the trust as a result of the trustee's retaining any property upon which there is later discovered to be hazardous materials or substances requiring remedial action pursuant to any federal, state, or local environmental law, unless the trustee contributed to the loss or depreciation in value through willful misconduct or gross negligence.

8

## Article 5
## SUCCESSION AND COMPENSATION OF TRUSTEES

      **5.1.** <u>Successor Trustees</u>.  Any vacancy in the trusteeship, however occurring, shall be filled by such bank, trust company, or other organization with trust powers, wherever located, which has assets worth at least One Hundred Million Dollars under trust administration as shall be designated by the following, in the order of preference indicated: **(i)**　　　ı's parents who are then living and competent (by unanimous agreement, if both parents are then living and competent), or either parent alone if the other parent is deceased or incompetent; **(ii)** the legal guardian or guardians (by unanimous agreement, if more than one person is serving as a legal guardian) of 　　ı's estate or person, if a guardian has been appointed for him; **(iii)** 　　　ı, if he is living and competent and no person is then serving as his legal guardian, **(iv)** the Distribution Director.  The same persons in the order of preference indicated shall have the right to designate a successor Distribution Director upon any vacancy in the office of Distribution Director; provided, however, the Trustee rather than the Distribution Director shall have this right under clause (iv) above.  Upon accounting for and delivery of the trust property to a successor Trustee, the former Trustee shall be completely discharged of all duties to the Trust,　　ı, and any other persons or entities with interests in the Trust.  Upon acceptance, a successor Trustee so appointed shall be vested with all of the duties and powers, discretionary or otherwise, granted to the original Trustee by the terms of this instrument.  No successor trustee or Distribution Director shall be held responsible for any act or omission of a predecessor.

      **5.2.** <u>Resignation and Removal</u>.  Each Trustee or Distribution Director shall have the right to resign by delivering a written notice of resignation to the person entitled to appoint a successor trustee.  In addition, the person then holding the power to appoint a successor trustee pursuant to Article 5.1 above shall have the right to remove any Trustee or Distribution Director, with or without cause; provided, however, such right to remove without cause can only be exercised once within any 24 month period.  Any such removal shall be made by written notice signed by the individual or individuals making it and delivered to the Trustee or Distribution Director being removed at least 60 days before its effective date.  No resignation or removal of a Trustee shall become effective until the acceptance of the trusteeship by a successor Trustee designated in accordance with Article 5.1.

      **5.3.** <u>Compensation</u>.  Any corporate Trustee, and any Distribution Director, shall be entitled to receive reasonable compensation for services hereunder pursuant to their regular schedule of fees for such services as published from time to time, and are authorized to deduct the same, as well as all other expenses and costs of administration, from the funds in their hands.  A copy of the current fee schedule of the Trustee and Distribution Director is attached hereto.

9

**5.4.** <u>Trust Advisors</u>. Any persons serving as natural or legal guardian for        will serve as Trust Advisors under this instrument. The Trustee or Distribution Director will consult with the Trust Advisors at regular intervals concerning the administration of the trusts and the financial and other status, needs, and desires of the beneficiary, and the Trustee or Distribution Director will provide the Trust Advisors with any information they may request regarding the trust, including, without limitation, full and complete accountings of all trust expenditures, receipts, and investments. The Trustee and Distribution Director are not required to follow the advice of the Trust Advisors if they determine it is advisable to follow a different course of action, and they are not required to consult on day to day trust administration.

**Article 6**
**ADDITIONAL PROVISIONS**

**6.1.** <u>Accounts</u>. The Trustee shall provide annual accounts to        , or to each person serving as a legal guardian for        , whether of his person or of his estate, or both, in whatever form may be mutually agreed by to by the parties.

**6.2.** <u>Applicable Law</u>. The Trust herein created shall be deemed to be an Ohio trust and shall be governed and interpreted in all respects by the laws of the State of Ohio, regardless of the beneficiary's place of residence.

**6.3.** <u>Court Jurisdiction</u>. It is intended that this Trust be initially administered without the intervention or oversight of any court. However, the Trustee shall file an application with the probate court in the county of        's residence ("Probate Court") requesting it to accept jurisdiction and oversight of this Trust if requested to do so by        or the legal guardian or guardians (by unanimous agreement, if more than one person is serving as a legal guardian) of        's estate or person, if        is under guardianship at that time. In addition, the Trustee on its own initiative can at any time file an application for the Probate Court to accept jurisdiction and oversight of the Trust. If the Probate Court assumes jurisdiction of this Trust, then the Trust shall be further administered in accordance with such rules and procedures applicable to special needs trusts under the jurisdiction of the Probate Court as may exist from time to time, all expenditures, distributions, or other payments from the Trust shall be made only upon approval of the Probate Court, amendments to the trust instrument pursuant to Article 4.4 can be made only upon approval of the Probate Court, and all appointments of successor trustees must be approved by the Probate Court.

10

IN WITNESS WHEREOF, Deborah Chong and Joshua L. Roberts, parents of and First National Trust Company and National Distribution Consultants, LLC, have executed this instrument effective the date first above written.

_____           _____
Deborah Chong, mother of                          Joshua L. Roberts, father of


First National Trust Company, Trustee

By: _____

Its: __VICE PRESIDENT_____


National Distribution Consultants, LLC,
Distribution Director

By: _____

Its: _____


11

ACKNOWLEDGMENTS

State of Ohio      )
                   )  :ss
County of Greene   )

The foregoing instrument was acknowledged before me this 17th day of January, 2019, by Deborah Chong and Joshua L. Roberts.

_____
Notary Public
My Commission expires:_____

State of _Pennsylvania_ )
                        )  :ss
County of _Allegheny_   )

The foregoing instrument was acknowledged before me this _14th_ day of January, 2019, by _Kathleen T. Minnock_ of First National Trust Company, a Pennsylvania corporation, on behalf of the corporation.

_Michele A. Rock_
Notary Public
My Commission expires: _9/14/2020_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Michele A. Rock, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Sept. 14, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

State of _Pennsylvania_ )
                        )  :ss
County of _Allegheny_   )

The foregoing instrument was acknowledged before me this _14_ day of January, 2019, by _Mary Ann Logan_ of National Distribution Consultants, LLC, a Pennsylvania corporation, on behalf of the corporation.

_Alexis Salonica_
Notary Public
My Commission expires: _9/17/19_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Alexis Salonica, Notary Public
Mt. Lebanon Twp., Allegheny County
My Commission Expires Sept. 17, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

12

14322786v1



Passionate Advocates. **Proven Approach.**



1.25% Annual

Please note that the above fee is an account administration fee collected by NDC Advisors.
Corporate Trustee administration/investment fees are charged separately by the Corporate Trustee.

Real estate purchases/sales will incur a fee of 1% of the purchase/sale price.
Accounts that hold real estate incur an annual 0.75% real estate holding fee on the value of the real estate.

## Partner. Preserve. **Prosper.**

800-601-8974

310 Grant Street, Suite 1205 \ Pittsburgh, PA 15219 \ info@ndcadvisors.com



## First National Trust Company

### National Distribution Consultants, LLC
### Corporate Trustee Fee Schedule

|  | **Annual Fee Rate** |
| --- | --- |
| **Annual Corporate Trustee Fee (1)** | .50% |

Annual Fee Rate is applied to market value of participating Trust assets at trust inception and is charged in its entirety. Additionally, the annual fee rate is applied and charged to the market value of Client Trust Accounts on each trust's anniversary date thereafter.

For Subsequent Deposits received after trust inception, the Fee will be pro-rated based upon the number of days remaining until the next following anniversary date.

**Trust Services Fees**

| | |
| --- | --- |
| Trust Installation Fee | No Charge |
| Annual Statements | No Charge |
| ACH (Direct Deposits) | No Charge |
| Tax Information/Grantor Letter | $275 per |
| Real Estate Holding Fee | $1,000 per |

**Event Contingent Fees**

| | |
| --- | --- |
| Trust Termination Fee | No Charge |
| Check Stop Payment Request | $50 per |
| Wire Transfer Fee | $25 Domestic / $50 Foreign |
| Extraordinary Special Services (2) | $125 per hour |
| Preparation and Filing Court Accounting | Cost to Outside Preparer |

1. The Annual Corporate Trustee Fee ("Fee") will be calculated as a percentage of the market value of all assets (including, but not limited to, securities and cash) in a Client's Trust Account. The Fee is payable at trust inception, a period following the execution of Client Trust Account documents during which funding occurs, and at each trust's anniversary date thereafter and is deducted directly from the Client's Trust Account. For Subsequent Deposits received after trust inception or anniversary date, the Fee will be pro-rated based upon the number of days remaining until the next following anniversary date.

2. Extraordinary Special Services: Additional fees may be charged for service requests that are extraordinary or otherwise beyond those specified above. These may include, but are not limited to, court appearances, travel time and similar extraordinary items.